UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAI CORPORATION,<br><br>          Plaintiff,<br>     v.<br><br>INTEGRATED SCIENCE SOLUTIONS, INC., ET AL.,<br><br>          Defendants. | No. C-06-5349 JSW (JCS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS COUNTERCLAIMANTS' CLAIMS FOR LIBEL AND SLANDER UNDER FED. R. CIV. P. 12(b)(6)**<br>**[Docket No. 23]** |

## I.   INTRODUCTION

Plaintiff, PAI Corporation ("PAI"), filed this action on August 30, 2006, asserting that Defendant Cecelia McCloy and the company she headed, Integrated Science Solutions, Inc. ("ISSI"), took advantage of ISSI's position as subcontractor with PAI to "usurp[] PAI's role as prime contractor [and] take over the consulting contract" PAI had been awarded with the National Aeronautics and Space Administration/Ames Research Center (NASA/ARC").[1] On January 5, 2007, Defendants filed an answer to the complaint and asserted counterclaims for breach of contract, libel

---

[1] On February 3, 2006, PAI filed a lawsuit on the same subject matter against the same defendants, Case No. C-06-0767 EDL.  *See* Request for Judicial Notice in Support of Counterdefendants' Motion to Dismiss Defendants' Countercomplaint for Failure to State a Claim Upon Which Relief Can be GRANTED (Fed. R. Civ. P. 12(b)(6)) ("Request for Judicial Notice"), Ex. A (complaint). That action was dismissed by PAI without prejudice pursuant to Rule 41(a) of the Federal Rules of Civil Procedure on May 24, 2006. The Court grants PAI's Request for Judicial Notice to the extent that judicial notice is taken that the attached pleadings were filed in the previous action. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (holding that "under Fed. R. Evid. 201, the court may take judicial notice of matters of public record); *see also Walker v. Woodford*, 454 F. Supp. 2d 1007, 1022 (S.D. Cal. 2006) (holding that "[d]ocuments that are part of the public record may be judicially noticed to show . . . that a judicial proceeding occurred, or that a document was filed in another court case").

and slander. The breach of contract claim is asserted against PAI only, while the libel and slander counterclaims are asserted against both PAI and an executive of PAI, Doan Phung (collectively, Counterdefendants). Counterdefendants PAI and Phung now bring a Motion to Dismiss Counterclaimants' Claims for Libel and Slander under Fed. R. Civ. P. 12(b)(6) ("the Motion"). A hearing on the Motion was held on Friday, April 20, 2007, at 9:30 a.m. The parties have consented to the jurisdiction of the undersigned magistrate judge, pursuant to 28 U.S.C. § 636(c), for all purposes except trial. For the reasons stated below, the Motion is GRANTED in part and DENIED in part.

**II.   BACKGROUND**

    **A.   The Complaint**

PAI is a Tennessee corporation that was founded in 1983 by Doan Phung, an expert in nuclear engineering and environmental sciences. Complaint at 1, 3. PAI generates most of its revenues by bidding for governmental safety and environmental services projects from various government agencies, including NASA. *Id*.

ISSI is a California Corporation that was founded by Cecelia McCloy, a citizen of California, in March 1999. Complaint at 4. At that time, McCloy was president of ISSI and her husband, David Dobson (also a citizen of California), was vice-president. *Id*. Previously, McCloy had been vice-president of a large company that was in the same field as PAI, Science Application International Corporation ("SAIC"). Complaint at 3-4. McCloy left SAIC in early 1999. Complaint at 4.

In late 1998, NASA/ARC issued a request for proposal ("RFP") to provide technical site services for occupational safety, industrial hygiene, environmental and medical services under contract ("the OSIHMES Contract"). *Id*. At the time NASA/ARC issued the RFP for the OSIHMES contract, SAIC was the incumbent contractor providing these services and McCloy was the on-site program manager. *Id*. NASA/ARC decided to "recompete" the contract in 1999 as a set-aside for small business. *Id*. at 4-5. Because SAIC was a large company, it was not eligible to compete. *Id*. at 5.

Both McCloy, who was planning to leave SAIC to form ISSI, and PAI were interested in bidding on the RFP, and between late 1998 and May 1999, McCloy and Phung met a number of

times to discuss a possible partnership regarding the OSIHMES Contract. *Id*. at 5. On May 10, 1999, PAI and ISSI entered into a Teaming Agreement under which McCloy would be hired as a full-time employee of PAI in the position of program manager on the OSIHMES Contract, if awarded, and ISSI would be guaranteed 20% of the work volume and profit in the areas of occupational safety, industrial hygiene and environmental services. *Id*. at 6. PAI, in turn, would be the prime contractor. *Id*. ISSI agreed that its relationship with PAI would be exclusive and that it would not contribute to proposals for the OSIHMES Contract by competitors. *Id*. The parties agreed that they would not disclose any confidential or proprietary information received under the Teaming Agreement for three years after its termination, and that they would not recruit or hire employees of the other who were identified in the bid proposal as potential workers on the OSIHMES Contract without the consent of the other. *Id*.

On March 6, 2000, PAI was awarded the prime contract by NASA/ARC. *Id*. at 8. PAI recommended ISSI as a subcontractor and NASA accepted the recommendation. *Id*. Pursuant to the Teaming Agreement, McCloy was hired as a full-time employee of PAI in March 2000. *Id*. at 9. She signed an Employment Agreement and promised to work four ten-hour days on site at NASA/ARC in her capacity as PAI program manager. *Id*. McCloy also signed three confidentiality agreements promising to keep PAI proprietary information confidential. *Id*. She also signed a Potential Conflict of Interest Disclosure form and Agreement on Non-Disclosure of Trade Secrets. *Id*. As agreed in the Teaming Agreement, PAI also entered into a subcontract with ISSI. *Id*. at 10.

PAI alleges that "almost as soon as McCloy became the [program manager], she failed to live up to her fiduciary obligations as an executive of PAI." *Id* at 11. Among other things, PAI alleges that McCloy failed to work the 40 hours per week on-site as PAI program manager and often performed ISSI work unrelated to the OSIHMES Contract even when she was on-site. *Id*. at 12. McCloy allegedly gave ISSI employees preferential treatment over PAI employees and also used PAI proprietary information regarding cost structures to increase ISSI's billing without PAI's knowledge. *Id*. at 13.

After warning McCloy about PAI's conflict of interest policy, both orally and in writing, in January 2002, PAI asked McCloy to resign as program manager. McCloy refused, and in March

3

2002, she was terminated. *Id*. at 15. The subcontract with ISSI, however, was not terminated. *Id*. In the meantime, McCloy allegedly used her close ties at NASA/ARC to influence the opinion of NASA/ARC employees, resulting in poor performance grades for PAI in 2002. *Id*. PAI further alleges that due, in part, to McCloy's influence, NASA/ARC split the OSIHMES Contract into two separate service contracts, both of which would be rebid. *Id*. ISSI bid on one of the proposals and won the contract, allegedly because it had secretly contacted PAI employees, and, using PAI's proprietary information regarding salary and benefits, obtained agreements from a number of them to work for ISSI if it won the contract. *Id*. at 16. A third party won the other contract. *Id*. Having lost both contracts, PAI was obligated to downsize from 12 to 6 employees. *Id.*

On the basis of these factual allegations, PAI asserts claims for breach of fiduciary duty, breach of contract, misappropriation of trade secrets, fraud, negligent and intentional interference with contract, negligent and intentional interference with prospective economic advantage, negligent and intentional interference with employment contracts, and violations of Cal. Bus. & Prof. Code §§ 17200 *et seq.*

### B. The Counterclaims

ISSI and McCloy filed three counterclaims ("the Counterclaims") on January 5, 2007. First, ISSI alleged that PAI had not paid the full amount due to ISSI under the subcontract and on that basis asserted a counterclaim for breach of contract against PAI.

Second, ISSI and McCloy asserted a claim for libel, alleging that "[b]eginning in or about March 2002, . . . PAI and Phung published writings stating that McCloy was removed as program manager for the NASA Ames Research Center contract . . . because her position as a PAI employee and president of [ISSI], which was also a subcontractor to PAI, created a significant conflict of interest, and violated federal regulations and PAI policy." Counterclaim at 5. ISSI further alleged "[u]pon information and belief, such writings have continued to be published up to the date of filing of this counterclaim." *Id*. Finally, they alleged that the "above described publications were not privileged [and were] published by Counterdefendants PAI and Phung with malice and ill will toward McCloy and the desire to injure her and her reputation." *Id*.

4

Third, ISSI and McCloy asserted a claim for slander, alleging that "on several occasions since January 2002, Counterdefendants PAI and Phung made false oral statements to others including ISSI employees, PAI employees and employees and officials of the United States Government concerning McCloy." *Id*. at 6. ISSI and McCloy further alleged, "[u]pon information and belief, such false oral statements have continued to be published by Counterdefendants PAI and Phung up to the date of filing of this Counterclaim. McCloy and ISSI allege that the slanderous statements by PAI and Phung include the following:

> 1. Counterdefendants told employees of PAI that McCloy violated PAI's conflict of interest policy, violated federal law regarding conflict of interest, and falsely billed PAI for time spent on matters unrelated to performance of PAI's contract with NASA.
>
> 2. Counterdefendants told employees of PAI, ISSI and NASA that McCloy's *close relationship* with a NASA official resulted in NASA's decision to issue two solicitations for work at Ames Research Center so that one of the two contracts could be awarded to ISSI.
>
> 3. Counterdefendants told employees of PAI and ISSI that McCloy was removed as program manager for dishonesty, unethical conduct and self-dealing, and that after her removal, McCloy intentionally hampered PAI's performance of the prime contract.
>
> 4. Counterdefendants told NASA officials that McCloy was using government property in an unauthorized manner.

*Id*. at 7 (emphasis in original). McCloy and ISSI allege that the statements were false and were made with malice and further, that the statements "were not privileged because they were made with malice and ill will toward McCloy with the desire to injure her and her reputation." *Id*. at 8.

**C.   The Motion**

In the Motion, PAI and Phung challenge the slander and libel claims on several grounds. First, they assert that these claims should be dismissed as untimely. Second, they argue that the statements alleged are opinions, and thus, cannot give rise to claims for slander and libel. Third, they assert that it is evident on the face of the allegations the statements are privileged under the interested person privilege and/or the judicial proceeding privilege and therefore, that the libel and slander claims should be dismissed. Fourth, they assert that the allegations of malice in support the

slander and libel claims are insufficient because they are not supported by specific factual allegations. PAI and Phung also request that ISSI and McCloy be ordered to provide a more definite statement, pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, arguing that they are unable to respond to the libel and slander Counterclaims because the specific content and dates of the statements has not been provided.

PAI and Phung also assert that Phung is an improper party and should be dismissed. In particular, they argue that the requirements of Fed. R. Civ. P. 19 and 20 (governing joinder) are not satisfied because the statements made by Phung were, according to ISSI and McCloy's allegations, made exclusively in his official capacity. Therefore, PAI and Phung assert, Phung's joinder is not necessary to afford "complete relief," as required under Rule 19. Similarly, they assert that there is no "right to relief in respect or arising out of the same transaction or occurrences" as to Phung because Phung was not acting on an individual basis and therefore, there is no right to individual liability.

### III. ANALYSIS

#### A. Legal Standard Applicable to Rule 12(b)(6) Motions

A claim should not be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Parks Sch. of Bus., Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal can be based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990). On a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Id.* Where a court dismisses for failure to state a claim pursuant to Rule 12(b)(6), it "should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

#### B. Choice of Law

A federal district court sitting in diversity applies state substantive law and federal procedural rules. *See Erie R. Co. v. Tomkins*, 304 U.S. 64, 78 (1938). For the purposes of *Erie*, statutes of limitations in diversity cases are considered substantive, *see Guar. Trust Co. v. York*, 326

U.S. 99, 108-110 (1945), while pleading standards are considered procedural. *See Clark v. Allstate Ins. Co.*, 106 F. Supp. 2d 1016, 1018 (S.D. Cal. 2000). With respect to the latter, "[w]here state law directly conflicts with applicable rules of the Federal Rules of Civil Procedure, federal courts must apply the Federal Rules – not state law." *Id.* (citing *Hanna v. Plumer*, 380 U.S. 460 (1965)).

In determining which state's substantive law applies to state law claims, a federal district court applies the choice of law principles of the state in it which sits. *Arno v. Club Med, Inc.*, 22 F.3d 1464, 1467 (9th Cir. 1994). Under California choice of law principles, California substantive law is applied unless a "true conflict" is found between the laws of the potentially interested states. *Reich v. Purcell*, 67 Cal. 2d 551, 552-553 (1967).

Here, the parties agree that California law – including its statute of limitations – applies to ISSI and McCloy's Counterclaims for libel and slander. They also appear to assume that California's heightened pleading standards apply to these claims. As discussed further below, however, the adequacy of the allegations with respect to these claims is determined under Federal Rules of Civil Procedure 8 and 9 rather than state pleading standards.

### C.   Statute of Limitations

Pursuant to Cal. Civ. Proc. Code § 340(c), actions for libel or slander must be brought within one year of the date of publication. *See Campbell v. Jewish Comm. for Pers. Serv.*, 125 Cal. App. 2d 771, 774 (1954). Where a particular statement is republished, for example, where it appears in a book of which several editions are published, the "single-publication" rule provides that the statute of limitations begins to run on the date of the first "general distribution of the publication to the public." *The Traditional Cat Ass'n, Inc. v. Gilbreath*, 118 Cal. App. 4th 392, 401 (2004) (holding that under single publication rule, statements made on website that had not been changed for over a year prior to initiation of action were barred by one-year statute of limitations). PAI asserts that the libel and slander claims are barred in their entirety because McCloy and ISSI allege that the statements began in March 2002, almost five years before the Counterclaims were filed, and that the subsequent statements were merely republications that fall under the single-publication rule. McCloy and ISSI concede that "earlier defamatory statements may not be actionable," but they assert that statements within the one-year limitation period are actionable. In particular, they assert

that these subsequent statements are not republications of earlier statements, as in *Gilbreath*, but rather, new actionable conduct.

It is clear from the face of the complaint that to the extent the libel and slander claims are based on statements made prior to January 5, 2006 – one year before the Counterclaims were asserted – the claim is barred. It is impossible to determine from the allegations, however, whether the statements allegedly made between January 5, 2006, and January 5, 2007, are merely republications of earlier statements, and thus, barred, or rather, new actionable conduct. Accordingly, to the extent the claim covers statements made within the limitations period, the Motion is DENIED.

### D.     Opinion Statements as Basis for Libel and Slander Claims

Under California law, a statement may be defamatory only if a "reasonable fact finder could conclude [it] declares or implies a provably false assertion of fact." *Ruiz v. Harbor View Cmty. Ass'n*, 134 Cal. App. 4th 1456, 1471 (2005). While the question of whether a statement is one of opinion or fact is a question of law for the court, if the court concludes that the statement could reasonably be construed as either fact or opinion, the issue should be resolved by a jury. *Campanelli v. Regents of the Univ. of Cal.*, 44 Cal. App. 4th 572, 578 (1996). In making this determination, the court must consider the totality of the circumstances, looking, in particular to the language used in the statement and the context in which it is made, to determine the "natural and probable effect" the words would have on the average reader. *Id.*

In *Campanelli*, the court held that the allegedly defamatory statements were non-actionable opinions where a university official made a statement quoting the father of a basketball player that he "felt" the coach (the plaintiff in the action) was putting so much pressure on his son that it was making him "physically ill." *Id.* at 579. The court pointed out that the word "felt" indicated an opinion, and that in light of the highly charged atmosphere surrounding the coach's termination, the statement could only be taken as "a subjective assessment based on parent intuition or colorful hyperbole over [the coach's] behavior, but cannot be construed as intending to convey a verifiable assertion regarding his son's health." *Id.*

8

1   Here, the allegations in the complaint do not establish, as a matter of law, that the defamatory
2   statements at issue could not reasonably be construed as statements of fact. PAI and Phung
3   allegedly made statements that McCloy violated federal law and PAI conflict of interest policy and
4   billed PAI for matters unrelated to the OSIHMES contract, among other things. These statements do
5   not appear to be the sort of subjective statements at issue in *Campanelli*. Nor do the *allegations*
6   indicate that the context in which the statements were made or the language used would support such
7   a conclusion. Therefore, dismissal of the libel and slander claims on the basis that they are based on
8   opinions is unwarranted at this stage of the case.

### E.   Interested Person Privilege

Under Cal. Civ. Code § 47(c), a statement may be privileged if it is made:

> without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information.

Cal. Civ. Code § 47(c). Although privilege is generally pleaded as an affirmative defense, it may be asserted on a motion to dismiss where the privilege is clear from on the face of the claims. *Tschirsky v. Superior Court*, 124 Cal. App. 3d 534, 538 (1981). Here, the interested person privilege is not evident from the face of the claims because McCloy and ISSI have alleged that the statements at issue were made with malice. As discussed further below, in federal court malice need only be averred generally. *See* Fed. R. Civ. P. 9(b). Further, even aside from the question of malice, the allegations contain insufficient detail to determine whether the other requirements for the privilege are met. Accordingly, dismissal of the libel and slander claims based on the interested person privilege is inappropriate at this stage of the case.

### F.   Judicial Proceeding Privilege

Under Cal. Civ. Code § 47(b), statements made in the course of a judicial proceeding enjoy an "absolute privilege which is in no way affected by the presence of malice." *Ascherman v. Natanson*, 23 Cal. App. 3d 861, 865 (1972). The privilege attaches to "any communication: 1) made in judicial or quasi-judicial proceedings; 2) by litigants or other participants authorized by law; 3) to achieve the object of the litigation; and 4) that have some connection or logical relation to the

9

action." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006) (citations omitted). "It is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." *Id.*; *see also Ascherman*, 23 Cal. App. 3d at 865 ( "[T]he absolute privilege attaches to any publication that has any reasonable relation to the action and is permitted by law if made to achieve the objects of the litigation even though the publication is made outside the courtroom and no function of the court or its officers is involved").

Because the allegations supporting the libel and slander claims here do not identify the particular statements made or the dates they were made, it is impossible to determine from the face of the complaint whether the litigation applies. Therefore, dismissal of the libel and slander claims on this basis is unwarranted at this stage of the case. The Court notes, however, that litigation between the same parties has been ongoing since February 3, 2006, with only a brief break between the May 24, 2006 dismissal of its claims without prejudice by PAI in Case No. C-06-0767 and initiation of this action, on August 30, 2006. In order to prevail on their Counterclaims, McCloy and ISSI will have the burden of establishing that the allegedly defamatory statements were made sometime after January 5, 2006, and that they had no logical relationship to the litigation between the parties.

### G.  Sufficiency of Malice Allegations

In order to establish libel or slander under California law, a plaintiff must establish that the statement was made with malice. Under Cal. Civ. Code § 48, "malice is not inferred from the communication." Rather, actual facts showing malice must be alleged. *Martin v. Kearney*, 51 Cal. App. 3d 309, 312 (1975). This provision, however, is in direct conflict with Rule 9(b) of the Federal Rules of Civil Procedure, which provides that malice may be averred generally. In the face of this conflict, the Court is bound to follow federal procedural rules. *See Clark v. Allstate Ins. Co.*, 106 F. Supp. 2d 1016, 1018 (S.D. Cal. 2000). Accordingly, the Court concludes that the allegations of malice are sufficient.

### H.  Request for More Definite Statement

PAI and Phung assert that the allegations supporting the libel and slander Counterclaims are so vague that PAI and Phung cannot reasonably be required to frame a responsive pleading and

10

1 therefore, they are entitled to a more definite statement, pursuant to Rule 12(e) of the Federal Rules

2 of Civil Procedure.[2]  The Court agrees.

3      It is well-established that in federal court, the degree of specificity required to adequately plead state law claims for libel and slander is governed by Rule 8 of the Federal Rules of Civil Procedure rather than technical state law pleading standards requiring that allegedly defamatory statements be set forth *in haec verba*.  *See Barber v. Nationwide Commc'ns, Inc.*, 1995 WL 940517 (N.D. Tex. May 30, 1995) (in federal court sufficiency of allegations supporting libel and slander claims is governed by Rule 8 rather than the technical pleading requirements of state law governing such claims); *Traffas v. Bridge Capital Corp.*, 1990 WL 251740 (D. Kan. Dec. 3, 1990) (same); *Baxter v. Travenol Labs., Inc.*, 93 F.R.D. 379, 381 (S.D. Ohio 1981) (same); *Liguori v. Alexander*, 495 F. Supp. 641, 647 (S.D.N.Y. 1980) (same).  Rule 8 requires only that a complaint provide a "short and plain statement of the claim" and that pleadings be "simple, concise, and direct."  Fed. R. Civ. P. 8(a) & (c).  Courts have held that the requirements of Rule 8 are met with respect to libel and slander claims so long as the allegations provide the defendant with "sufficient notice of the communications complained of to allow [the defendant] to defend [itself]."  *McGeorge v. Cont'l Airlines, Inc.*, 871 F.2d 952, 955-56 (10th Cir. 1989) (citing *Liguori*, 495 F. Supp. at 647).

     Applying this standard, some courts have held that libel and slander claims were adequately pleaded even where the specific statements were not provided.  For example, in *Baxter v. Travenol*, cited by McCloy and ISSI, the court held that the allegations were "barely" sufficient to satisfy Rule 8 where it was alleged that a particular counterclaim defendant had made "various untrue statements" to the plaintiff in the case, including that another defendant in the case "had conspired to misappropriate confidential business information."  93 F.R.D. at 381.  The court held that the

---

[2] Rule 12(e) provides, in part, as follows:

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. . . .

Fed. R. Civ. P. 12(e).

11

allegations were sufficient even though the specific statements were not provided and there were no allegations regarding the time and place of the allegedly defamatory statements. *Id*.

On the other hand, countless district courts have found that the requirements of Rule 8 have not been met in cases where libel and slander claims failed to allege the substance of the statements and/or the time and place in which they were made. *See, e.g., White v. Hansen*, 2005 WL 1806367 (N.D. Cal. July 28, 2005) (holding that allegation that defendant made belittling statements about plaintiff was not sufficient to support slander claim because plaintiff did not identify any specific statements or indicate to whom the statements were made); *Harris v. City of Seattle*, 315 F. Supp. 2d 1112, 1123-24 (D. Wash. 2004) (holding that defamation claims failed because the plaintiff alleged only that defendants "fabricated stories" and disseminated reports that "contained falsities" but did not identify what these alleged "falsities" and "stories" were or when the statements occurred); *Ahmed v. Gelfand*, 160 F. Supp. 2d 408, 416 (E.D.N.Y. 2001) (holding that to satisfy Rule 8, plaintiff asserting defamation claim must "merely state the substance of the purported communication, who made the communication, when it was made, and to whom it was communicated," and holding that allegations were insufficient in that case because plaintiff did not identify which defendant made the supposedly defamatory statements, when the statements were made, or to whom they were made); *Celli v. Shoell*, 995 F. Supp. 1337, 1345-46 (D. Utah 1998) (holding general allegation that defendants had made defamatory statements against the plaintiffs over a period of four years was too vague to satisfy Rule 8 because "the complaint fails to identify any specific defamatory statements made by the defendants or when, where, or to whom any defamatory statements were made"); *Barber*, 1995 WL at *3 (holding that although plaintiff asserting defamation claim need not set forth defamatory statement verbatim, claim did not satisfy Rule 8 where it alleged that defendant "intentionally published to third parties a false reason for her separation [from the defendant company]" without revealing the substance of the "false reason"); *Traffas*, 1990 WL at *2 (holding that complaint required amendment where open-ended allegations seemed to refer to alleged defamatory statements without revealing their substance); *Tiernan v. Fujitsu Imaging Sys. of Am.*, 1989 WL 91879 (N.D. Ill. Aug. 9, 1989) (holding that where plaintiff alleged slander based on statements made by unidentified sales representatives employed by

12

defendant that he was "incompetent" and "drank heavily," allegations were too vague to satisfy Rule 8 because speaker was not identified); *Weeks v. Distinctive Appliance Corp.*, 1985 WL 3536 (N.D. Ill. Oct. 24, 1985) (holding that defamation claim failed where plaintiff alleged that "[d]uring the course of Plaintiff's termination and immediately thereafter, Defendant, through its agents and employees, and specifically Anthony B. Joseph and S. Michael Joseph, made untrue statements to individuals, including distributors Plaintiff had recruited, about Plaintiff" were insufficient because they failed to identify when, where, or to whom the statements were made or the substance of the defamatory statements); *Leo Winter Assocs., Inc. v. Dep't of Health & Human Servs.*, 497 F. Supp. 429, 432 (D.D.C. 1980) (holding that defamation claims failed where complaint was "replete with generalities but devoid of specific defamatory comments").

Here, McCloy and ISSI have set forth the substance of the alleged defamatory statements. *See* Counterclaims at ¶¶ 27, 35. However, they have failed to specifically identify who made the statements, when they were made and to whom they were made. As a result, PAI cannot reasonably be expected to respond. While it is not a plaintiff's obligation to assist the defendant in developing its affirmative defenses, a plaintiff is required to provide adequate notice to allow a defendant to defend against the asserted claims. As pled, the slander and libel claims asserted by ISSI and McCloy do not meet that standard.

### I. Joinder of Phung

PAI asserts that Phung should be dismissed because the requirements for joinder of additional parties under Rules 19 and 20 of the Federal Rules of Civil Procedure are not met. Because the Court concludes that requirements of Rule 20, governing permissive joinder, are satisfied, the Court finds that dismissal of Phung on this basis is unwarranted.

There are two requirements for permissive joinder under Rule 20:

> All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of occurrences *and* if any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a) (emphasis added). Here, these requirements are met. Under California law, both a corporation and a corporate officer who made an allegedly defamatory statement on behalf of

13

the corporation may be liable, at least where the officer actively participates in the tortious conduct. *See U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 595 (1970). As the libel and slander Counterclaims seek to establish concurrent liability over PAI and Phung for the same conduct, it is clear that they arise out of the same transactions as the claims against PAI and will involve common issues of law and fact.

## IV. CONCLUSION

The Motion is GRANTED in part and DENIED in part as follows: Counterclaimants shall amend their libel and slander Counterclaims, within thirty (30) days of the date of this Order, to provide the substance of each allegedly defamatory statement, who made each statement, when the statement was made, and to whom the statement was made. With respect to PAI's request to dismiss the libel and slander claims pursuant to Rule 12(b)(6), the Motion is DENIED without prejudice to reasserting these defenses following amendment of the Counterclaims.

IT IS SO ORDERED.

Dated: April 24, 2007

JOSEPH C. SPERO
United States Magistrate Judge

14