PATRICIA MEAGHER, #113219
ROSSI & MEAGHER LLP
The Hobart Building
582 Market Street, Suite 301
San Francisco, CA  94104
Telephone: (415) 362-6517
Facsimile: (415) 362-6519
Email: pmeagher@rossimeagher.com

WILLIAM E. ADAMS #153330
DAVID C. LEE #193743
FITZGERALD, ABBOTT & BEARDSLEY LLP
1221 Broadway, 21st Floor
Oakland, California  94612
Telephone: (510) 451-3300
Facsimile: (510) 451-1527
Email: wadams@fablaw.com
        dlee@fablaw.com

Attorneys for Defendants
INTEGRATED SCIENCE SOLUTIONS, INC.
CECELIA MCCLOY and DAVID C. DOBSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO

| | |
|---|---|
| PAI CORPORATION, | Case No.: C06-05349 JCS |
| Plaintiff, | |
| vs. | **DEFENDANTS' TRIAL BRIEF** |
| INTEGRATED SCIENCE SOLUTIONS, INC., a California Corporation; CECELIA McCLOY, individually and doing business as INTEGRATED SCIENCE SOLUTIONS, INC., a California Corporation; DAVID C. DOBSON; individually and doing business as INTEGRATED SCIENCE SOLUTIONS, INC., a California Corporation, | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   legal argument ................................................................................ 3

    A.    Count 1: McCloy's Alleged Breach of Fiduciary Duty. ................................. 3

    B.    McCloy's Alleged Breach of Contracts (Trade Secret, Employment, and Confidential Agreements). ................................................................. 4

        1.    PAI Cannot Factually Establish McCloy's Allegedly Breaching Conduct. ................................................................................ 5

        2.    PAI Cannot Establish Causation. .............................................. 6

    C.    McCloy's Alleged Misappropriation of Trade Secrets. .............................. 7

    D.    ISSi's Alleged Breach of the Subcontract Agreement. ............................. 8

        1.    PAI Cannot Prove It Suffered Any Damages from the Alleged Breach. .............................................................................. 8

        2.    PAI's Claim Lacks Factual Support. ........................................ 9

            (a)    ISSi's Conduct In Competing Against PAI. ................................ 9

            (b)    ISSi's Alleged Misappropriation of PAI Information. ................. 9

            (c)    ISSi's Failure To Provide For Or Account For Services............ 10

    E.    PAI's Fraud Claim. .............................................................................. 10

    F.    PAI's Interference With Contract Claims. ............................................... 14

    G.    PAI's Interference With Prospective Economic Advantage. ........................ 14

    H.    PAI's Alleged Unfair Business Practices Claim. ....................................... 16

III.  CONCLUSION ................................................................................... 17

# TABLE OF AUTHORITIES

**Page**

## Cases

ARC LifeMed, Inc. v. AMC-Tennessee, Inc.
    183, S.W.3d 1, 26 (Tenn.Ct.App.2005)................................................................4, 8

Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.
    20 Cal. 4th 163 (1999) ...............................................................................16

Della Penna v. Toyota Motor Sales, U.S.A., Inc.
    11 Cal.4th 376 (1995) ................................................................................15

Doctor v. Lakeridge Const. Co.
    252 Cal.App.2d 715 (1967) ..........................................................................10

Emery v. Visa Int'l Serv. Ass'n
    95 Cal.App.4th 952 (2002) ...........................................................................16

Gagne v. Bertran
    43 Cal.2d 481 (1954) .................................................................................10

Hidden Harbor v. Amer. Fed. of Musicians
    134 Cal.App.2d 399 (1955) ..........................................................................14

Hobart v. Hobart Estate Co.
    26 Cal.2d 412 (1945) .................................................................................10

Hoffman v. McMullen
    83 F. 372 (9th Cir. 1897) ...............................................................................9

Iconix, Inc. v. Tokuda, et al.
    403 F.Supp.2d 968 (N.D. Cal. 2005) ..................................................................3

Microsystems v. Microsoft Corp.
    87 F. Supp.2d 992 (N.D. Ca. 2000) .................................................................16

Motorola, Inc. v. Fairchild Camera & Instrument Corp.
    366 F.Supp. 1173 (D. Ariz. 1973) ....................................................................8

National Medical Transportation Network v. Deloitte & Touche
    62 Cal.App.4th 412 (1998) ...........................................................................15

North American Chemical Co. v. Superior Court
    59 Cal.App.4th 764 (1997) ...........................................................................15

ii.

4/4/08 (24977) #298656.1

Nygard, Inc. v. Uusi-Kerttula
    159 Cal.App.4th 1027 (2008) ........................................................ 14

Olsen v. Breeze
    48 Cal.App.4th 608 (1996) .......................................................... 16

Orient Handel v. United States Fid. & Guar. Co.
    192 Cal.App.3d 684 (1987) .......................................................... 10

Sargent Fletcher, Inc. v. Able Corp.
    110 Cal.App.4th 1658 (2003) ......................................................... 7

Seeger v. Odell
    18 Cal.2d 409 (1941) ................................................................ 10

Shurpin v. Elmhirst
    148 Cal.App.3d 94 (1983) ........................................................... 10

Swan v. Chorpenning
    20 Cal. 182 (1882) ................................................................... 9

**Statutes**

Business & Professions Code
    § 17200 ......................................................................... 1, 16

Civil Code
    § 1710 (a) ......................................................................... 10

iii.
DEFENDANTS' TRIAL BRIEF
CASE NUMBER C06-05349 JCS

4/4/08 (24977) #298656.1

1    Defendants INTEGRATED SCIENCE SOLUTIONS, INC., CECELIA McCLOY, and

2  DAVID C. DOBSON (collectively, "Defendants"), hereby submit their trial brief in the above-

3  captioned action as follows:

4  **I.    <u>INTRODUCTION</u>**

5    This dispute centers upon Plaintiff PAI Corporation's failure to successfully bid for two

6  service contracts for NASA Ames Research Center for the period 2005 through 2010, the first

7  for Environmental Science ("ES Contract") and the second for Health and Safety ("OSIHM").

8  Having lost both bid proposals, the ES Contract to ISSi and the OSIHM Contract to another

9  bidder, PAI initiated a protest in which it claimed NASA allowed prejudice and bias to

10  influence the selection of contractors.  When that protest failed, PAI initiated this lawsuit

11  against ISSi and its principals, Cecelia McCloy and David Dobson (collectively, "Defendants")

12  alleging a variety of business torts.  Despite the various claims asserted against ISSi, the

13  gravamen of PAI's lawsuit primarily focuses on three specific allegations: (1) Defendants

14  misappropriated PAI's trade secrets and used them to successfully compete against PAI for the

15  ES Contract; (2) Defendants solicited PAI's employees for employment, including Tom

16  Anderson, in violation of the parties' Subcontract Agreement, thereby resulting in PAI's

17  damages arising from ISSi's award of the ES Contract; and (3) ISSi tortiously interfered with

18  PAI's OSIHM proposal, thereby causing PAI to lose to another bidder.

19    PAI will present ten different causes of action against Defendants at trial, including the

20  following: (1) McCloy's breach of fiduciary duty; (2) McCloy's breach of trade secret,

21  employment, and confidentiality agreements; (3) misappropriation of PAI's trade secrets; (4)

22  ISSi's breach of the Subcontract Agreement; (5) fraud; (6) negligent interference with

23  OSIHMES Contract; (7) intentional interference with OSIHMES Contract; (8) intentional

24  interference with prospective economic advantage under OSIHMES Contract; (9) negligent

25  with prospective economic advantage under OSIHMES Contract; and (10) unfair competition

26  under Bus. & Prof. Code § 17200.

27

28

4/4/08 (24977) #298656.1

1     As a result of Defendants' alleged conduct, PAI seeks approximately $27,000,000 in

2 damages, which allegedly arise from the lost profits PAI claims it would have received from

3 the ES and OSIHM Contracts and other lost opportunities.  For the reasons addressed below,

4 PAI's claims all suffer from the same fundamental flaw: none of the alleged acts or omissions

5 of PAI can be shown to have caused PAI to lose its NASA bid proposals.  On the contrary, the

6 evidence will show that PAI lost its bid proposals because of significant weaknesses in their

7 own proposals, and on the basis of those weaknesses, NASA ranked PAI below its other

8 capable competitors.  Accordingly, PAI cannot establish liability against the Defendants on

9 damages that arise from its claims.

10     What will be clear is that PAI, in its anger over the loss of the ES Contract to ISSi,

11 improperly breached its existing Subcontract with ISSi for NASA services.  Specifically,

12 according to the terms of the Subcontract Agreement, ISSi incurred, or was entitled to receive

13 payment, for the following costs and fee:

| | | | | |
|---|---|---|---|---|
| 1. | Invoiced but unpaid invoice amounts | = | $ 10,326.28 |
| 2. | Unpaid net award fee for Period 10 | = | $ 6,522.51 |
| 3. | Adjustment from invoiced to actual indirect cost rates | = | $326,954.03 |
| 4. | PAI withheld amounts for PAI overhead allocated to ISSi | = | $ 44,009.75 |
| 5. | Computed Fee on PAI work denied to ISSi through completion of prime contract | = | $ 95,020.08 |
| | | TOTAL: | $482,832.65 |

22     PAI has refused to pay ISSi such costs and fees in breach of its obligations under the

23 Subcontract Agreement.

24 / / /

25 / / /

26 / / /

27

28

2.

DEFENDANTS' TRIAL BRIEF
CASE NUMBER C06-05349 JCS

4/4/08 (24977) #298656.1

## II.    LEGAL ARGUMENT

### A.    Count 1: McCloy's Alleged Breach of Fiduciary Duty

PAI alleges that McCloy had a fiduciary duty to "uphold PAI's interests and to faithfully perform her duties as the PM of the OSIHMES Contract as a full-time employee." Complaint, at ¶113.

As previously determined by this Court, California law governs this cause of action. Under California law, a fiduciary duty exists where an individual is an officer who participates in the management of the corporation and exercises some discretionary authority. Iconix, Inc. v. Tokuda, et al., 403 F.Supp.2d 968, 976 (N.D. Cal. 2005).

Evidence will establish that McCloy was never an officer or director of PAI, and did not participate in the management of PAI or exercise any discretionary authority as an officer while serving as Program Manager at the NASA/ARC site. In fact, Ms. McCloy made clear at the inception of her employment with PAI that she was an ISSi employee and should be treated as a competitor. The corporate management functions of PAI were exclusively handled by PAI's management team in Oak Ridge, Tennessee or by others at the NASA/ARC site. McCloy's duties and responsibilities were limited to one contract in California. As to that one contract, she was required to obtain PAI's approval before undertaking any significant actions on behalf of PAI. Accordingly, McCloy never acted in the capacity as an officer of PAI and otherwise did not owe any fiduciary duty to PAI.

PAI's own job description defines a project manager as "the person who is charged with the management of the program(s) contract(s)." Nothing in PAI's own definition supports the argument that McCloy was an officer. Consequently, PAI has no evidence that McCloy ever owed a fiduciary duty to PAI in the first instance.

Even if PAI were to prove the existence of a fiduciary duty (which it cannot), it cannot establish that McCloy's alleged conduct actually caused PAI's claimed damages. Absent a showing of such a nexus, PAI's claim cannot be established as a matter of law.

4/4/08 (24977) #298656.1

**B.    McCloy's Alleged Breach of Contracts (Trade Secret, Employment, and Confidential Agreements)**

The Court has determined that PAI's breach of contract claim is governed by Tennessee law despite the fact that none of the contracts at issue in this claim contain choice of law provisions. Under Tennessee law, the elements of any breach of contract claim include: (1) the existence of an enforceable contract, (2) the nonperformance by defendant amounting to a breach of the contract, and (3) damages caused by the breach. <u>ARC LifeMed, Inc. v. AMC-Tennessee, Inc.</u>, 183, S.W.3d 1, 26 (Tenn.Ct.App.2005).

Here, PAI generally alleges that McCloy breached her employment agreement, multiple confidentiality agreements and a trade secret agreement by doing or failing to do the following:

- "Failing to avoid organizational conflicts of interest";
- "Failing to work full-time as an employee of PAI";
- using PAI's trade secrets, proprietary and confidential information without PAI's knowledge and consent to solicit PAI employees and key personnel to work for ISSi against PAI"; and
- misappropriating PAI's trade secrets, proprietary and confidential data including cost information and personnel information to formulate a bid against PAI."

In order to understand PAI's claim, it is necessary to specifically delineate and define the contracts at issue.

- <u>The McCloy Employment Agreement</u>. This is comprised of two letters dated March 4, 2000 and March 28, 2000 (see documents Bates numbered PAI021-001 and D00478-00479.) The basic terms of the employment agreement are that Ms. McCloy would serve as a Program Manager for PAI on the NASA ARC project, which was to be performed entirely in the State of California. Her salary was to be $92,000. McCloy, as the president of a competitor to PAI, was to complete a conflict of interest avoidance disclosure. McCloy agreed to manage her duties to the best of her ability. These letters do not address

4.

DEFENDANTS' TRIAL BRIEF
CASE NUMBER C06-05349 JCS

4/4/08 (24977) #298656.1

proprietary information, confidentiality, or solicitation of PAI employees. Moreover, they establish that McCloy conditioned her acceptance of the PM position on her working at the NASA site Monday through Thursday and be available by telephone on Friday.

- <u>Three Confidentiality Agreements</u>.  During the course of her employment with PAI, McCloy executed three versions of a one page document titled, "Agreement Regarding Confidentiality of PAI Executive Information." Ms. McCloy executed the agreement on March 24, 2000, again on June 6, 2000 and again on May 15, 2001. (See document Bates numbered PAI065-068.)  The agreement required McCloy to keep confidential information given to her by PAI or otherwise encountered, not to pass any proprietary or confidential information to persons who do not have a right to know, and to return any proprietary information or materials when she terminates her employment with PAI.  The agreements do not contain any provision stating that these obligations would extend beyond the employment period.

- <u>Agreement On Non-Disclosure of Trade Secrets</u>.  On March 23, 2000, McCloy executed this agreement and agreed not to disclose confidential information or trade secrets "to others" during or anytime after the termination of the "working relationship" and to return to PAI such information obtained "during the course of the relationship" with PAI.  (See document Bates numbered PAI065-068.)

1. **PAI Cannot Factually Establish McCloy's Allegedly Breaching Conduct**

PAI cannot establish that McCloy breached the Employment, Confidentiality, or Trade Secret agreements by misappropriating alleged proprietary information and/or trade secrets of PAI. Specifically, PAI has to date never identified with any particularity the trade secrets it claims were misappropriated by McCloy, and is further unable to prove that McCloy or ISSi used any protected information to formulate proposals to compete against PAI for either the ES

1  or the OSIHM Contract.  Notably absent is any evidence of the specific PAI-trade secrets

2  allegedly incorporated into ISSi's winning proposal for the ES Contract.

3       PAI cannot present any evidence establishing that McCloy actually disclosed any PAI-

4  trade secrets in an effort to "solicit" PAI employees and key personnel to work for ISSi against

5  PAI in the event that ISSi were awarded the ES or OSIHM Contracts.

6       PAI has persistently and repeatedly focused on its claim that McCloy engaged in an

7  Organizational Conflict of Interest ("OCI") as its justification for terminating her.  PAI further

8  cites McCloy's termination as the impetus for a NASA vendetta that resulted in PAI's loss of

9  both the ES and the OSIHM proposals.  PAI's fixation on the alleged "OCI" is factually

10 misguided.  PAI was put on notice from the commencement of the subcontractor relationship

11 with ISSi that McCloy, in addition to serving as the NASA ARC program manager, intended to

12 continue her responsibilities as President of ISSi including marketing and business

13 development for ISSi - what PAI now claims was a conflict of interest.  There is no evidence

14 that McCloy or ISSi engaged in any conduct that created a "conflict of interest."

15      There is further no evidence that McCloy represented to PAI that that she would work

16 at least 40 hours a week; rather, prior to hiring her as a Program Manager, PAI agreed that

17 McCloy could work on site Monday through Thursday and be available by telephone on

18 Friday.  Accordingly, PAI is unable to establish that it relied on Defendants' representations.

19 Further, McCloy's communications to PAI establish that she did not make the alleged

20 representation in the first instance.  PAI further is unable to establish that the alleged

21 misrepresentation proximately caused damage to PAI.

22           **2.     PAI Cannot Establish Causation**

23      PAI's claims for breach of contract against McCloy further fail because PAI cannot

24 establish that McCloy's alleged breaches were connected with any damages.  PAI asserts that

25 McCloy's alleged breaches resulted in PAI losing in the competitive bidding process for the ES

26 and OSIHM Contracts.  As a result, PAI claims damages arising from those lost contracts,

27 namely, lost profits PAI expected to earn if awarded the contracts.

28

4/4/08 (24977) #298656.1

1

## C.    <u>McCloy's Alleged Misappropriation of Trade Secrets</u>

2       PAI alleges that McCloy, on or about August 2004 and February 2005, misappropriated

3 PAI's trade secrets/confidential information, including, PAI's proprietary cost information,

4 property management plan, procurement plans, salary and benefit plans, employee bonus plan,

5 personnel information, or indirect cost rates.

6       Under California law, a prima facie claim for misappropriation of trade secrets "requires

7 the plaintiff to demonstrate: (1) the plaintiff owned a trade secret, (2) the defendant acquired,

8 disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's

9 actions damaged the plaintiff." <u>Sargent Fletcher, Inc. v. Able Corp.</u>, 110 Cal.App.4th 1658,

10 1665 (2003). PAI bears the burden of proof for establishing each element both at the outset of

11 the case and during trial. <u>Id.</u>

12       Here, PAI's claim is fundamentally flawed. Specifically, PAI cannot establish that

13 McCloy misappropriated any alleged proprietary information and/or trade secrets of PAI. To

14 date, PAI has not produced any evidence that McCloy misappropriated or used any of PAI's

15 cost information, property management plan, procurement plans, salary and benefit plans,

16 employee bonus plan, personnel information, or indirect cost rates. PAI's theory seems to be

17 that because Ms. McCloy had access to this information during her tenure as program manager,

18 she therefore must have taken the information with her. This is a flatly insufficient showing.

19 PAI is further unable to establish that McCloy either disclosed any protected information to

20 third parties or used it to formulate any proposals to compete against PAI for the ES or OSIHM

21 Contracts.

22       Although not articulated in its complaint, PAI apparently claims that McCloy also

23 misappropriated PAI's 1999 winning bid proposal for the NASA/ARC OSHIMES Contract.

24 However, it is undisputed that PAI and ISSi <u>jointly</u> developed that proposal pursuant to the

25 Teaming Agreement executed by the parties. Accordingly, PAI's assertion that the jointly

26 created proposal belongs exclusively to PAI is without merit. Moreover, PAI's election to team

27 with ISSi to create the proposal and to share ideas and information for populating the proposal

28

DEFENDANTS' TRIAL BRIEF
CASE NUMBER C06-05349 JCS

4/4/08 (24977) #298656.1

1   evidences PAI's failure to maintain such information as proprietary.  See, Motorola, Inc. v.

2   Fairchild Camera & Instrument Corp., 366 F.Supp. 1173, 1186 (D. Ariz. 1973) ("plaintiff's

3   trade secret claims must fail because…no real effort was made by plaintiff… to keep them

4   secret.").

5          PAI's claims for misappropriation also fails as a matter of law because PAI cannot

6   establish that McCloy's alleged breaches were the proximate cause of PAI's alleged damages,

7   or that the alleged misappropriation of PAI trade secrets resulted in PAI losing the competition

8   to provide ES or OSIHM services to NASA/ARC.

9          **D.      ISSi's Alleged Breach of the Subcontract Agreement**

10         PAI claims that ISSi breached the Subcontract Agreement by:

11         • Competing against PAI for the ES and OSIHM Contract;

12         • Soliciting PAI's employees;

13         • Failing to perform services and to account for services provided; and

14         • Misappropriating PAI's proprietary information.

15         PAI further claims that as a result of ISSi's actions, PAI lost the competitive bidding

16  process for the ES and OSIHM Contracts, and therefore was damaged.  Under Tennessee law,

17  PAI's claim for breach of contract must establish the following elements: (1) the existence of an

18  enforceable contract, (2) the nonperformance by defendant amounting to a breach of the

19  contract, and (3) damages caused by the breach.  ARC LifeMed, Inc. v. AMC-Tennessee, Inc.,

20  183, S.W.3d 1, 26 (Tenn.Ct.App.2005).

21         **1.      PAI Cannot Prove It Suffered Any Damages from the Alleged
                      Breach**

22

23         PAI claims that as a result of the above breaches, PAI lost in the competitive bidding

24  process for the ES and OSIHM Contracts.  Put another way, PAI's claim is predicated on the

25  assertion that ISSi's alleged breaches resulted directly in NASA's decision to award the ES

26  Contract to ISSi and the OSIHM Contract to CSS (a non-party to this action).

27

28
                                              8.

4/4/08 (24977) #298656.1

1    PAI's causation evidence amounts to nothing more than a dogmatic assertion that there

2    is a cause and effect relationship between the Defendant's actions and PAI's loss of the

3    proposals. At trial, it is expected that PAI will not offer any evidence that NASA's decision to

4    award the ES Contract to ISSi was premised on either the occurrence of ISSi's allegedly

5    breaching conduct, or the effect of ISSi's alleged conduct. Absent such evidence, PAI claim

6    fails as a matter of law because PAI cannot establish that ISSi's alleged breaches proximately

7    caused PAI's damages as a result of losing the competitive bidding process for the ES and

8    OSIHM Contracts.

9                    **2.    PAI's Claim Lacks Factual Support**

10    PAI's claim also fails for lack of evidence supporting the majority of factual allegations

11    alleged in its claims.

12                    **(a)    ISSi's Conduct In Competing Against PAI**

13    The Subcontract is silent on the issue of whether ISSi is restricted from competing

14    against PAI on any contract, let alone the ES and OSHIM Contracts at issue in this case.

15    Accordingly, this facet of PAI's claim against ISSi fails from the outset simply because ISSi

16    was not restricted from doing so by the written terms of the contract. Indeed, even if PAI had

17    attempted to contract with ISSi not to compete for later contracts, that provision would not be

18    enforceable because it would violate California's public policy against restraining competition

19    for public contracts. Swan v. Chorpenning, 20 Cal. 182 (1882); Hoffman v. McMullen, 83 F.

20    372, 376 (9th Cir. 1897).

21                    **(b)    ISSi's Alleged Misappropriation of PAI Information**

22    As addressed in detail above, PAI cannot establish that ISSi (or McCloy) actually

23    misappropriated any proprietary information and/or trade secrets of PAI. Specifically, PAI is

24    unable to identify the specific trade secrets it claims were misappropriated by ISSi, and is

25    further unable to prove that ISSi used trade secrets information to formulate its proposals to

26    compete against PAI for the ES or OSIHM Contracts.

27

28
                                    9.

4/4/08 (24977) #298656.1

1

2

               **(c)**     **ISSi's Failure To Provide For Or Account For Services**

3        PAI's claim that ISSi failed to provide contracted services or to account for those

4  services is equally groundless.  To date, PAI has not assembled any evidence establishing: (1)

5  what services ISSi allegedly failed to provide; (2) what services ISSi failed to account for; or

6  (3) how ISSi's alleged failure to provide or account for the services has harmed or damaged

7  PAI.  To the contrary, the quality and completeness of ISSi's services at NASA/ARC is

8  established by the consistently high NASA award fee evaluations earned by PAI while using

9  ISSi's subcontracting services.

10     **E.**     **PAI's Fraud Claim**

11        California law provides that intentional misrepresentation is defined as "the suggestion,

12  as a fact, of that which is not true, by one who does not believe it to be true."  Civ. Code § 1710

13  (a).  The essential elements to be proven are (1) defendant made a representation, (2) the

14  representation was false, (3) defendant knew that the representation was false, (4) a showing of

15  defendant's intent to defraud, i.e., to induce reliance, (5) justifiable reliance on the

16  representation by plaintiff, and (6) resulting damage.  Seeger v. Odell, 18 Cal.2d 409, 414

17  (1941).

18        A misrepresentation must be a material and knowingly false representation of fact.

19  Hobart v. Hobart Estate Co., 26 Cal.2d 412, 422 (1945); see also, Orient Handel v. United

20  States Fid. & Guar. Co., 192 Cal.App.3d 684, 693 (1987).  To be actionable, the representation

21  must have been made with the intent to induce a party to alter his position to his injury or his

22  risk.  Gagne v. Bertran, 43 Cal.2d 481, 488 (1954) (emphasis added).  In other words a

23  "plaintiff must prove that [the] material and knowingly false representation was made with

24  intent to induce action" and that it was false and that defendants knew it to be untrue.  Shurpin

25  v. Elmhirst, 148 Cal.App.3d 94, 101-102 (1983); Doctor v. Lakeridge Const. Co., 252

26  Cal.App.2d 715, 718 (1967).

27

28

4/4/08 (24977) #298656.1

1    PAI asserts that Defendants' numerous misrepresentations (set forth below) proximately

2    caused approximately $27,500,000 in damages.  For the reasons set forth below (in connection

3    with each alleged misrepresentation), each the alleged misrepresentations fails because one or

4    more required elements cannot be proved.

5        (i)    "*McCloy would work at least forty (40) hours per week as a full-time employee*

6    *of PAI in her role as PM of the OSIHMES Contract.*"  There is no evidence that McCloy

7    represented to PAI that that she would work at least 40 hours per week; prior to hiring her as a

8    Program Manager, PAI agreed that McCloy could work on site Monday through Thursday and

9    be available by telephone on Friday.  Accordingly, PAI is unable to establish that it relied on

10   Defendants' representations as the basis for hiring her.

11       Even if McCloy made the misrepresentation (which she did not), PAI has not tied that

12   misrepresentation to any of its alleged damages.  Accordingly, PAI is unable to establish that

13   the alleged misrepresentation proximately caused damage to PAI.

14       (ii)    "*Defendants would avoid organizational conflicts of interest.*"  PAI cannot

15   establish that it justifiably relied on McCloy's alleged representation prior to hiring her as its

16   PM.  Documentary evidence establishes that, prior to hiring McCloy, PAI knew she intended to

17   continue working at ISSi while being employed at PAI, and in fact, was advised by McCloy to

18   keep all sensitive business-related information from her.  Notwithstanding, PAI elected to hire

19   her despite knowledge of her dual positions.

20       PAI further has not clearly delineated the alleged organizational conflicts of interest

21   created by McCloy.  While PAI has alleged that McCloy misappropriated trade secrets for use

22   against PAI in future competitive bidding incidents, as addressed above, PAI's claim for

23   misappropriation suffers from a dearth of supporting facts.  Similarly, PAI has failed to

24   demonstrate how McCloy's activities to promote ISSi's business development (while employed

25   by PAI) somehow deprived PAI of competitive opportunities or caused PAI to lose business to

26   ISSi.

27

28

4/4/08 (24977) #298656.1

1    PAI further cannot establish how this alleged misrepresentation proximately caused its

2    damages.  In other words, PAI cannot demonstrate that McCloy's activities to promote ISSi

3    activities or her alleged misappropriation of PAI information is causally connected to PAI's

4    alleged damages arising from the loss of the ES and OSIHM Contracts.

5        (iii)   *"Defendants would not solicit PAI's employees to compete against PAI."*  PAI's

6    allegation is predicated on the same facts supporting PAI's claim for breach of the Subcontract

7    Agreement.  In short (given the explanation above), PAI is unable to establish that the alleged

8    misrepresentation proximately caused damage to PAI.

9        (iv)   *"ISSi would only be entitled to twenty percent (20%) of the total number of*

10   *safety and environmental key personnel and labor time."*  PAI is unable to establish that any

11   such representation was made or that it relied on the alleged representation.  PAI further is

12   unable to establish that the alleged misrepresentation proximately caused damage to PAI.

13       (v)   *"ISSi would account for work, labor, and services invoiced to PAI."*  PAI is

14   unable to establish that any such representation was made or that it relied on the alleged

15   representation.  PAI further is unable to establish that any such representation made was false

16   or that the alleged misrepresentation proximately caused damage to PAI.

17       (vi)   *"Defendants would keep confidential and not use or disclose to third parties*

18   *PAI's proprietary and confidential information."*  PAI's allegation is predicated on the same

19   facts supporting PAI's breach of contract claim.  PAI cannot establish that Defendant's alleged

20   fraudulent conduct proximately caused PAI's alleged damages.  Specifically, PAI cannot

21   establish that it lost the competition for the ES or OSIHM Contracts because of Defendant's

22   alleged representation, or identify the specific trade secrets it claims were misappropriated by

23   McCloy and/or ISSi.

24       (vii)   *"Upon leaving PAI, McCloy promised to return all confidential documents that*

25   *PAI gave to her."*  PAI cannot establish that the alleged misrepresentation was false.  PAI is

26   unable to establish what confidential PAI documents it alleges McCloy retained.  PAI was not

27   induced to take any action as a result of McCloy's alleged misrepresentation.  PAI further

28

4/4/08 (24977) #298656.1

1   cannot establish that Defendant's alleged fraudulent conduct proximately caused PAI's alleged

2   damages.

3        (viii)   "*Defendants would treat ISSi and PAI employees equally and fairly and not give

4   ISSi employees preference*." PAI cannot establish that the alleged misrepresentation was false.

5   PAI is unable to establish how Defendants treated ISSi and PAI employees differently.  PAI

6   was not induced to take any action as a result of Defendants' alleged misrepresentation.  PAI

7   further cannot establish that Defendant's alleged fraudulent conduct proximately caused PAI's

8   alleged damages.

9        (ix)    "*Defendants promised to work 'seamlessly' with PAI as part of PAI Team*." PAI

10  cannot establish that the alleged misrepresentation was false.  PAI is unable to establish how

11  Defendants failed to work "seamlessly" with PAI.  PAI is unable to establish that it relied on

12  the alleged representation, or was induced to take any action as a result of Defendants' alleged

13  misrepresentation.  Further, it is notable that PAI has not delineated the date this alleged

14  representation was made.  PAI further cannot establish that Defendant's alleged fraudulent

15  conduct proximately caused PAI's alleged damages.

16       (x)     "*Defendants would not make direct contact with NASA/ARC without express

17  prior authorization from PAI*." PAI is unable to establish that any such representation was

18  made or that it relied on the alleged representation.  PAI was not induced to take any action as a

19  result of Defendants' alleged misrepresentation.  PAI further cannot establish that Defendant's

20  alleged fraudulent conduct proximately caused PAI's alleged damages.

21       (xi)    "*Defendants would not make site visits to NASA/ARC facility without prior

22  approval of PAI*." PAI is unable to establish that any such representation was made or that it

23  relied on the alleged representation.  PAI was not induced to take any action as a result of

24  Defendants' alleged misrepresentation.  PAI further cannot establish that Defendant's alleged

25  fraudulent conduct proximately caused PAI's alleged damages.

26       (xii)   "*ISSi claimed fraudulently on its website that it worked directly for NASA/ARC,

27  ignoring the fact that it was a subcontractor to PAI and did not have any contractual privity

28

4/4/08 (24977) #298656.1

1    *with NASA/ARC*."  PAI is unable to establish that any such representation was made or that it

2    relied on the alleged representation, particularly as PAI had specific knowledge of ISSi's

3    subcontractor status prior to ISSi's alleged website statement.  PAI was not induced to take any

4    action as a result of Defendants' alleged misrepresentation.  PAI further cannot establish that

5    Defendant's alleged fraudulent conduct proximately caused PAI's alleged damages.

6    **F.      PAI's Interference With Contract Claims**

7          PAI's Sixth and Seventh Counts claims allege that Defendants negligently and

8    intentionally interfered with PAI's OSHIMES Contract with NASA/ARC.  Under California

9    law, the elements of an interference claim are: "(1) a valid contract between plaintiff and a third

10   party; (2) defendants' knowledge of the contract; (3) defendants' intentional acts designed to

11   induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of

12   the contractual relationship; and (5) resulting damage."  <u>Nygard, Inc. v. Uusi-Kerttula</u>, 159

13   Cal.App.4th 1027, 1047 (2008).

14         Here, PAI cannot establish that Defendants either intentionally or negligently interfered

15   with PAI's contractual relations with NASA because the OSIHMES contract was fully

16   performed and not disrupted.  Therefore, PAI is unable to establish a "breach" or disruption of

17   the OSIHMES Contract.  Indeed, PAI was not "damaged" by any alleged interference because

18   it obtained the full benefits of OSIHMES Contract from NASA.  <u>Hidden Harbor v. Amer. Fed.</u>

19   <u>of Musicians</u>, 134 Cal.App.2d 399, 402 (1955) (request for injunctive relief for interference

20   with contract rendered moot in given full performance of the contract allegedly interfered

21   with).  PAI's interference claim appears to be premised on the belief that PAI was entitled to be

22   selected for the ES and OSIHM proposals.  This notion is belied by PAI's contract with NASA

23   and the entire source selection process.

24   **G.      PAI's Interference With Prospective Economic Advantage.**

25         Under California law, the tort of negligent interference with prospective economic

26   advantage is established where a plaintiff demonstrates that:

27                      (1) an economic relationship existed between the plaintiff and a
                     third party which contained a reasonably probable future

28
                                              14.
                            DEFENDANTS' TRIAL BRIEF
                            CASE NUMBER C06-05349 JCS

4/4/08 (24977) #298656.1

economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship.

North American Chemical Co. v. Superior Court, 59 Cal.App.4th 764, 786 (1997).

With respect to the "intentional variety of the tort, the plaintiff must also establish the conduct was independently wrongful." Id. citing, National Medical Transportation Network v. Deloitte & Touche, 62 Cal.App.4th 412, 438-439 (1998).

It is further established that to prevail on interference with prospective economic advantage causes of action, a plaintiff has the burden of proving not only that defendants knowingly or negligently interfered with an economic relationship, but that they "engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal.4th 376, 393 (1995).

Here, PAI cannot establish the elements necessary to prevail on the claim.  Specifically, Defendant has not and cannot establish that Defendants actually interfered with PAI's alleged economic advantage arising from the OSIHMES Contract.  Evidence will establish that PAI was unsuccessful in its bidding efforts for the ES and OSIHM Contracts because its contract proposals were inferior to other proposals as evaluated by NASA/ARC.

PAI is further unable to demonstrate that the purported acts of Defendants (i.e., allegedly contacting PAI employees prior to submitting the ES Contract proposal, referencing incumbent employees in the ES Contract proposal, or identifying Tom Anderson as key personnel on the ES Contract proposal) proximately caused PAI's alleged damages, including the lost profits from the ES and OSIHM Contracts.  Rather, the evidence will unequivocally establish that PAI's ES Contract proposal was scored low because of PAI's proposed PM, not because of anything in the ISSi proposal.

15.

DEFENDANTS' TRIAL BRIEF
CASE NUMBER C06-05349 JCS

4/4/08 (24977) #298656.1

1

**H.    PAI's Alleged Unfair Business Practices Claim**

2

PAI alleges that Defendants engaged in multiple "unlawful" practices, including,

3

    a.    Fraud;

4

    b.    Misappropriation and disclosure of confidential and proprietary PAI
           information to compete against PAI;

5

    c.    Solicitation of PAI's employees in violation of the parties' written
           agreements;

6

    d.    Tortious interference with PAI's contractual advantage under the
           OSIHMES Contract;

7

    e.    Tortious interference with PAI's prospective economic advantage under
           the OSIHMES Contract....

8

9

Under California law, to prevail on a claim of under Bus. & Prof. Code §17200, a

10

plaintiff must establish that, "the practice is either unlawful (i.e., is forbidden by law), unfair

11

(i.e., harm to victim outweighs any benefit) or fraudulent (i.e., is likely to deceive members of

12

the public). Olsen v. Breeze, 48 Cal.App.4th 608, 617-618 (1996). Accordingly, where the

13

situation involves acts by a direct competitor, unfair competition is "conduct that threatens an

14

incipient violation of an antitrust law, or violates the policy or spirit of one of those laws

15

because its effects are comparable to or the same as a violation of the law, or otherwise

16

significantly threatens or harms competition." Cel-Tech Communications, Inc. v. Los Angeles

17

Cellular Tel. Co., 20 Cal. 4th 163, 187 (1999). In determining whether the challenged act is

18

"unfair" within the meaning of section 17200, the court may look to what is an "unfair method

19

of competition" in Section 5 of the FTC Act which, in turn, covers "acts which conflict with the

20

basic policies of the Sherman and Clayton Acts..." Microsystems v. Microsoft Corp., 87 F.

21

Supp.2d 992, 1000 (N.D. Ca. 2000).

22

Actions under section § 17200 are premised on the fundamental principle that a

23

business practice is unfair, and therefore, "the determination of whether a particular business

24

practice is unfair necessarily involves an examination of its impact on its alleged victim,

25

balanced against the reasons, justifications and motives of the alleged wrongdoer." Emery v.

26

Visa Int'l Serv. Ass'n, 95 Cal.App.4th 952, 965 (2002).

27

28

4/4/08 (24977) #298656.1

1        Here, PAI has not and cannot establish at trial that the alleged "practices" of Defendants

2    were "unlawful" as alleged.  As a threshold matter, Defendants have not engaged in any

3    unlawful or unfair business practices.  Defendants' conduct in connection with preparing

4    proposals for the ES and OSIHM Contracts did not violate any antitrust laws or policies.  In

5    contrast, Defendants' conduct is consistent with industry standards and practices regarding the

6    retention of incumbent employees, the identification of key personnel, and the use of visual

7    presentations as part of the bidding process.

8        Furthermore, PAI is unable to establish that Defendants' alleged business practices,

9    even if unfair (which they were not), directly impacted PAI in the manner alleged, i.e.,

10   Defendants' conduct resulted in PAI not being awarded the ES or OSIHM Contracts by NASA.

11   **III.    CONCLUSION**

12       For the foregoing reasons, PAI is not entitled to judgment or the damages prayed for in

13   its Complaint for Damages.  ISSi seeks recovery on its counterclaim for contract damages as

14   established by its experts.

15

16   Dated: April 4, 2008                    FITZGERALD, ABBOTT & BEARDSLEY LLP

17

18                                  By: _____

19                                  David C. Lee
                                    Attorneys for Defendants INTEGRATED

20                                  SCIENCE SOLUTIONS, INC., CECELIA
                                    MCCLOY and DAVID C. DOBSON

21

22

23

24

25

26

27

28

4/4/08 (24977) #298656.1