**United States District Court**
For the Northern District of California

1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    PAI CORPORATION,                              No. C-06-5349JCS

8              Plaintiff,

9         v.

10   INTEGRATED SCIENCE SOLUTIONS,
     INC., ET AL.,

11

12            Defendants.
     _____

13   INTEGRATED SCIENCE SOLUTIONS,
     INC., ET AL,

14

15            Counterclaimants

16        v.

17   PAI CORPORATION,

18            Counterdefendant.
     _____/

19

20                      **FINAL JURY INSTRUCTIONS**

21

22

23       DATED: October 27, 2008

24
                                        _____
25                                      JOSEPH C. SPERO
                                        United States Magistrate Judge
26

27

28

                                    1

**JURY INSTRUCTION NO. 1**

**DUTY OF JURY**

Members of the Jury.   Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you as to the law of the case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**JURY INSTRUCTION NO. 2**

**BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURY INSTRUCTION NO. 3**

**BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable.  This is a higher standard of proof than proof by a preponderance of the evidence.  You should base your decision on all of the evidence, regardless of which party presented it.

**JURY INSTRUCTION NO. 4**

**TWO OR MORE PARTIES – DIFFERENT LEGAL RIGHTS**

You should decide the case as to each defendant separately. Unless otherwise stated, the instructions apply to all parties.

**United States District Court**

For the Northern District of California

**JURY INSTRUCTION NO. 5**

**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1.      The sworn testimony of any witness;

2.      The exhibits which are received into evidence; and

3.      Any facts to which the lawyers have agreed.

**United States District Court**

For the Northern District of California

**JURY INSTRUCTION NO. 6**

**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1. Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2. Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3. Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

4. Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**JURY INSTRUCTION NO. 7**

**EVIDENCE FOR LIMITED PURPOSE**

     Some evidence was admitted for a limited purpose only.  As I instructed you during the trial, you may consider that evidence only for the limited purpose I described to you during the trial.

**JURY INSTRUCTION NO. 8**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

**United States District Court**

For the Northern District of California

**JURY INSTRUCTION NO. 9**

**RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

**JURY INSTRUCTION NO. 10**

**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

1.    The opportunity and ability of the witness to see or hear or know the things testified to;

2.    The witness's memory;

3.    The witness's manner while testifying;

4.    The witness's interest in the outcome of the case and any bias or prejudice;

5.    Whether other evidence contradicted the witness's testimony;

6.    The reasonableness of the witness's testimony in light of all the evidence; and

7.    Any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

**JURY INSTRUCTION NO. 11**

**USE OF NOTES**

Some of you have taken notes during the trial. Whether or not you took notes, you should rely on your own memory of what was said. Notes are only to assist your memory. You should not be overly influenced by the notes.

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION NO. 12**

**DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.  You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.  Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

**JURY INSTRUCTION NO. 13**

**CHARTS AND SUMMARIES IN EVIDENCE**

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION NO. 14**

**CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts and summaries not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

**JURY INSTRUCTION NO. 15**

**DUTY TO DELIBERATE**

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**JURY INSTRUCTION NO. 16**

**COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

**United States District Court**
For the Northern District of California

17

**JURY INSTRUCTION NO. 17**

**RETURN OF VERDICT**

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION NO.  18**

**CORPORATIONS – FAIR TREATMENT**

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

**United States District Court**

For the Northern District of California

**JURY INSTRUCTION NO.  19**

**LIABILITY OF CORPORATIONS—SCOPE OF AUTHORITY NOT IN ISSUE**

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

United States District Court

For the Northern District of California

20

**JURY INSTRUCTION NO. 20**

**"PLAINTIFF" AND "DEFENDANT" APPLIES TO EACH SIMILARLY DESIGNATED**

The words "plaintiff" and "defendant" apply to each plaintiff and to each defendant, respectively, except as you may be otherwise instructed.

**JURY INSTRUCTION NO.  21**

**DAMAGES – PROOF**

It is the duty of the Court to instruct you about the measure of damage.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiff on a claim, or for the defendant on a counterclaim, you must determine the appropriate damages.  The plaintiff has the burden of proving damages by a preponderance of the evidence.  Damages means the amount of money that will reasonably and fairly compensate the injured party for any injury that has been caused by the opposing party.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

**JURY INSTRUCTION NO. 22**

**STIPULATIONS OF FACT**

The parties have agreed to certain facts that will be read to you.  You should therefore treat these facts as having been proved.

1.      From 1993 through 1999, the environmental and safety programs at NASA /ARC were two separate contracts.  The first contract was referred to as the Medical Service contract and was awarded to Kelsey-Seybold.  The second contract was referred to as the Occupational Safety, Industrial Hygiene and Environmental contract which was awarded as a cost plus award fee type contract to SAIC.

2.      In or about 1999, NASA/ARC determined to combine the two contracts in its solicitation for the Occupational Safety, Industrial Hygiene, Medical and Environmental Services ("OSIHMES") contract and set it aside for a small business competition.

3.      David Dobson of ISSi wrote: "As this project is very important to the growth and expansion of ISSi, we have agreed to assign Cecelia McCloy, a co-principal of ISSi, to work full time for the program as Program Manager.

4.      McCloy agreed to be proposed as full-time Program Manager.  PAI's proposal stated, in part, "Based on the RFP2-37035 requirements and the qualifications of the undersigned, the PAI Team has offered and the undersigned as committed to be a key personnel for the project. PAI is committed to use and the undersigned is committed to perform in the proposed position.  Barring an unforeseen problem beyond the control of either party, the candidate will be present at Ames to work full-time in the program on the first day of the contract."

5.      In early 1999, PAI Corporation ("PAI") and Integrated Science Solutions, Inc. ("ISSi") signed a teaming agreement to work together to compete for an OSIHMES contract at NASA/ARC with PAI as prime contractor and ISSi as subcontractor.

6.      McCloy was an employee of Science Applications International, Inc. ("SAIC") from 1991 through 1998.

7.      McCloy agreed with PAI to be proposed as PAI's Program Manager for its OSIHMES proposal per the 1999 Teaming Agreement.

**United States District Court**
For the Northern District of California

8.   In March 2000, NASA awarded the OSIHMES contract to PAI for a 3-year base period and a 2-year option period.

9.   On or about March 6, 2000, PAI issued to ISSi a subcontract (hereinafter referred to as "Subcontract") under which ISSi would perform services as PAI's subcontractor on the NASA OSHIMES contract.  This subcontract was signed by ISSi on June 5, 2000. At that time, the Teaming Agreement expired on its own terms.

10.  The scope of the services to be performed by ISSi in the Subcontract is described in Attachment1, Statement of Work, page 21, as follows:

> The Subcontractor will provide all resources necessary to provide approximately 20% of the total contract services for each year and for the entire contract (in labor and labor dollars, whichever occur first) for occupational safety, industrial hygiene, environmental and medical support.  The subcontractor will provide staff as described below. The Subcontractor will participate in the following:
>
> o   Basic services and additional requirements for occupational safety, industrial hygiene, and environmental support services for the base period (March 6, 2000 to March 5, 2003).
>
> o   Basic services and additional requirements for occupational safety, industrial hygiene, and environmental support services for the optional periods (March 6, 2003 to March 5, 2005). The descriptions of the services are included by reference to contract NAS2-99205, Section J, Attachment (a)1, May 13, 1999. Only staff in the occupational safety, industrial hygiene, and environmental support services in this document apply for this subcontract.

11.  Doan Phung, the President of PAI signed the subcontract on behalf of PAI.  David Dobson, the Executive Vice President of ISSi signed the subcontract on behalf of ISSi on June 5, 2000.

12.  Both David Dobson as ISSi executive vice-president and Cecelia McCloy as ISSi president initialed the first 32 pages of the subcontract.

13.  The parties to the Subcontract did not modify or amend paragraph 4.7 of the Subcontract.

14.  PAI's contract at NASA/ARC was worth approximately $8M/year, with approximately 45-55 staff members, 3 teaming subcontractors, and over 70 suppliers of materials and services.

15.  PAI hired McCloy as its Program Manager for the OSIHMES Contract in March 2000.

16.  McCloy signed two OCI disclosure forms, on 3/23/2000 and 5/3/01 noting that she was also President of ISSi and marketing for ISSi.

24

17.     McCloy signed an agreement to comply with PAI Handbook on 3/23/2000.

18.      McCloy signed an agreement to follow PAI Office Regulations and Procedures on 3/23/2000.

19.     McCloy signed an agreement regarding technical and business information.

20.     McCloy signed an agreement on Non-Disclosure of Trade Secrets.

21.     McCloy signed three Agreements on Confidentiality of PAI Executive Information.  McCloy noted on those agreements that McCloy was President of ISSi and that she would continue marketing and business development.

22.     On May 3, 2001, PAI changed McCloy's status from a full-time employee to a part-time employee but her job authorities and responsibilities did not materially change.

23.     During the time McCloy was PAI's Program Manager for the PAI contract at NASA/ARC, she neither worked at nor ever visited PAI's corporate office in Oak Ridge, Tennessee.

24.     PAI president Doan Phung and members of PAI Tennessee headquarters came to NASA/ARC facility to work with McCloy and gave her documents and instructions.

25.     During the time period in which McCloy was employed by PAI, March 2000-March 2002, she was also President of her own company, ISSi.  Her timesheets indicate that she worked both for PAI and ISSi during the March 2000 to March 2002 time period.

26.     PAI terminated McCloy's employment as the Program Manager of the OSIHMES contract in March 2002.

27.     In late 2003, NASA issued a Sources Sought Synopsis for the purpose of gaining information on potentially qualified sources for a small business procurement for environmental services at NASA ARC.

28.     On July 16, 2004, the final RFP was issued by NASA which established a closing date of August 30, 2004 for submission of proposals for the ES contract. In late 2004, the final RFP was issued by NASA which established a closing date in February 2005 for the submission of proposals for the OSIHM contract.

29.     ISSi and PAI both submitted prime contractor proposals to compete for the ES and OSIHM contracts at NASA/ARC.

30. ISSi designated Tom Anderson as one of its key personnel in its proposal for the ES Contract and identified him as the proposed technical leader for the Wildlife/Habitat Conservation; Environmental Management Systems.

31. PAI designated Tom Anderson as one of its key personnel in its proposal for the ES Contract and identified him as the proposed technical leader for EMS, NEPA, Wildlife, and Pollution Prevention.

32. NASA's RFP for the ES Contract (Section H.11) defines "key personnel" as those personnel who are "considered essential to the work being performed under this contract."

33. On February 4, 2005, NASA sent a letter notifying PAI that ISSi was selected for award of the ES Contract.

34. PAI was awarded the OSHIMES contract in March 2000.

35. PAI offered McCloy the position of Program Manager.

36. The scope of the OSIHM Contract was similar to the scope for the OSIHM part of the 1999 OSIHMES Contract. The scope of the ES Contract was similar to the scope for the ES part of the 1999 OSIHMES Contract.

37. The ES RFP and the OSHIM RFP instructed offerors that NASA would evaluate how the offerors proposed to retain qualified incumbent employees.

38. The ES Contract was competed during 2004 and ISSi was awarded the contract while PAI came in second.

39. The OSIHM Contract was competed in 2005 and a third business was awarded the contract.

40. The government standards for judging which offeror to select for award are described in Section M of the ES RFP. The three evaluation factors are (i) Mission Suitability, (ii) Past Performance, and (iii) Cost.

41. Mission Suitability factor is most important, judged on the basis of 1000 points, and included understanding of the requirements (525 points), management approach (425 points), safety and health plan (25 points) and small and small disadvantaged business participation (25 points).

42. Past Performance and Cost are of equal weight, are not judged by point system and are "slightly less important than Mission Suitability."

43. Regarding personnel, the following requirements are referenced in the ES RFP:

a. M.2(c)(1)(ii) Staffing Plan, Training and Total Compensation Plan: The offeror's understanding of the skill mix, the levels of expertise and qualifications for positions other than key, and the distribution and effective use of the work force necessary to support this requirement, as demonstrated by the proposed staffing plan will be evaluated. The staffing plan will be evaluated to assess the realism of the proposed salaries and the offeror's procedures and authority level for waiving its own staffing standards. In addition, this subfactor will be used to evaluate the offeror's hiring plan and recruiting methods, plan for implementing on-going training required to support this effort, and record of recruiting and retention success for similar requirements.

b. M.2(c)(2)(i)(B): This subfactor will also consider the offeror's proposed approach to contract phase-in (at contract start) to ensure continuity of efficient services and the approach to initial training during phase-in...

c. M.2(c)(2)(iii): Key Personnel:  The key personnel subfactor will be used to evaluate those people who are designated as key personnel and the offeror's rationale in identifying the positions held by these personnel as key...This subfactor will also consider the commitment of the proposed key personnel, the degree of commitment of the offeror to use those personnel as key, and the percentage of time they will devote to the effort...

d. M.2(d)(2)(i). The Government will review recent and active contracts to determine the relevance of the experience to the work anticipated to be performed under this proposed contract....In evaluating technical performance, consideration will be given to the following: i. M.2(d)(2)(i)(D): Qualifications of personnel team.

e. M.2(d)(2)(ii). The Government will evaluate the offeror's and major subcontractors' recent and current performance in the area of contract management... consideration will be given to the following: i. M.2(d)(2)(ii)(A):  Incumbent staff retention.

f. M.2(e)(2) The government will evaluate the realism of each offeror's proposed costs to ensure the offeror understands the magnitude and complexity of the effort. This will include an evaluation of the extent to which proposed costs indicate a clear understanding of solicitation requirements, and reflect a sound approach to satisfying those requirements....

44. The goal for all offerors was to achieve the highest possible score on the non-price evaluation factors.

45. David Dobson knew and talked to many PAI employees by virtue of his visits to the NASA/ARC site as an executive of ISSi when accompanying Doan Phung to visit the customers and his visits to the NASA/ARC on social occasions.

46. David Dobson reviewed ISSi's proposals for the ES and OSIHM contracts prior to them being submitted.

**United States District Court**
For the Northern District of California

47. David Dobson knew that ISSi's proposals for the ES and OSIHM contracts contained the names of persons then employed by PAI.

48. As a subcontractor of PAI, ISSi was given award fee evaluations regarding the performance of the contract, including information on what the customers liked and disliked regarding performance. Specifically, ISSi had been given award fee evaluation for periods 1-8 for the OSIHMES Contract before it submitted its ES and OSHIM proposals.

49. ISSi wrote a letter in 2004 to then PAI employee Tom Anderson offering him a position as a Senior Environmental Manager contingent upon ISSi being awarded the NASA ARC ES contract and his position being fully funded.

50. ISSi proposed in their 2004 ES proposal the following then-PAI employee as key personnel: Tom Anderson.

51. Prior to submitting its 2004 ES proposal, ISSi obtained Tom Anderson's commitment to be 100% dedicated to work on the ES Contract which was indicated on ISSi's ES proposal to the government.

52. ISSi indicated in its ES proposal that it would "retain at least 95% of qualified incumbent employees" and assured NASA that, "[m]ost incumbent employees will stay."

53. Incumbent employees necessarily included PAI employees working at NASA/ARC.

54. ISSi proposed in their OSIHM proposal the following PAI employee as key personnel: Don Dains.

**JURY INSTRUCTION NO. 23**

**COUNTERCOMPLAINT - DESIGNATION OF PARTIES**

In this action a countercomplaint has been filed. The parties to the countercomplaint are named counter-complainant and counter-defendant and stand in the same relation as a plaintiff and a defendant under a complaint.

Unless otherwise stated, the instructions apply to the counter-complainant and counter-defendant in the same way that they apply to the plaintiff and defendant.

**JURY INSTRUCTION NO.  24**

**IDENTIFICATION OF PARTIES AND CLAIMS**

In this trial, the Plaintiff is PAI Corporation ("Plaintiff"), and the defendants are Ms. Cecelia McCloy ("McCloy"), Mr. David Dobson ("Dobson"), and Integrated Science Solutions, Inc. ("ISSi") (collectively "Defendants").

Plaintiff is seeking to recover damages against defendants based upon the following claims:

      Breach of Fiduciary Duty (Defendant McCloy)

      Breach of Contract (Defendant McCloy)

      Misappropriation of Trade Secrets (All Defendants)

      Breach of Contract (Defendant ISSI)

      Fraud (All Defendants)

      Intentional Interference With Prospective Economic Advantage (All Defendants)

      Negligent Interference With Prospective Economic Advantage (All Defendants)

      Violation of Cal. Bus. & Prof. Code § 17200 et seq. (All Defendants)

Defendant ISSi filed a counterclaimant.  In the counterclaimant, the counterclaimant is ISSi, and the counterdefendant is Plaintiff.  Counterclaimant is seeking to recover contractual damages against counterdefendant, based upon a claim of breach of the Subcontract.

**JURY INSTRUCTION NO. 25**

**FAILURE TO DENY OR EXPLAIN ADVERSE EVIDENCE**

You may consider whether a party failed to explain or deny some unfavorable evidence. Failure to explain or to deny unfavorable evidence may suggest that the evidence is true.

**JURY INSTRUCTION NO. 26**

**BELIEVABILITY OF WITNESS**

You are the sole and exclusive judges of the believability of the witnesses and the weight to be given the testimony of each witness.

In determining the believability of a witness you may consider any matter that has a tendency reasonably to prove or disprove the truthfulness of the testimony of the witness, including but not limited to the following:

The demeanor and manner of the witness while testifying;

The character and quality of that testimony;

The extent of the opportunity or ability of the witness to see or hear or otherwise become aware of any matter about which the witness testified;

The ability of the witness to remember or to communicate any matter about which the witness has testified;

The existence or nonexistence of a bias, interest, or other motive;

A statement previously made by the witness that is consistent or inconsistent with the testimony of the witness;

The existence or nonexistence of any fact testified to by the witness;

The attitude of the witness toward this action or toward the giving of testimony;

An admission by the witness of untruthfulness.

The character of the witness for honesty or truthfulness, or their opposites.

The witness' prior conviction of a felony.

**United States District Court**
For the Northern District of California

# JURY INSTRUCTION NO. 27

## WITNESS

A witness is a person who has knowledge related to this case.  You will have to decide whether you believe each witness and how important each witness's testimony is to the case.  You may believe all, part, or none of a witness's testimony.

In deciding whether to believe a witness's testimony, you may consider, among other factors, the following:

(a) How well did the witness see, hear, or otherwise sense what he or she described in court?

(b) How well did the witness remember and describe what happened?

(c) How did the witness look, act, and speak while testifying?

(d) Did the witness have any reason to say something that was not true? Did the witness show any bias or prejudice?  Did the witness have a personal relationship with any of the parties involved in the case?  Does the witness have a personal stake in how this case is decided?

(e) What was the witness's attitude toward this case or about giving testimony?

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

Do not make any decision simply because there were more witnesses on one side than on the other.  If you believe it is true, the testimony of a single witness is enough to prove a fact.

You must not be biased in favor of or against any witness because of his or her disability, gender, race, religion, ethnicity, sexual orientation, age, national origin, or socioeconomic status.

**JURY INSTRUCTION NO.  28**

**WILLFUL SUPPRESSION OF EVIDENCE**

You may consider whether one party intentionally concealed or destroyed evidence.  If you decide that a party did so, you may decide that the evidence would have been unfavorable to that party.

**JURY INSTRUCTION NO. 29**

**BELIEVABILITY OF WITNESS - CONVICTION OF A FELONY**

The fact that a witness has been convicted of a felony, if this be a fact, may be considered by you only for the purpose of determining the believability of that witness. The fact of a conviction does not necessarily destroy or impair a witness's believability. It is one of the circumstances that you may take into consideration in weighing the testimony of that witness.

**JURY INSTRUCTION NO.  30**

**EXPERT WITNESS TESTIMONY**

During the trial you heard testimony from expert witnesses. The law allows an expert to state opinions about matters in his or her field of expertise even if he or she has not witnessed any of the events involved in the trial.

You do not have to accept an expert's opinion. As with any other witness, it is up to you to decide whether you believe the expert's testimony and choose to use it as a basis for your decision. You may believe all, part, or none of an expert's testimony. In deciding whether to believe an expert's testimony, you should consider:

a.  The expert's training and experience;

b.  The facts the expert relied on; and

c.  The reasons for the expert's opinion.

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION NO.  31**

**CONFLICTING EXPERT TESTIMONY**

If the expert witnesses disagreed with one another, you should weigh each opinion against the others.  You should examine the reasons given for each opinion and the facts or other matters that each witness relied on.  You may also compare the experts' qualifications.

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION NO.  32**

**EXPERTS - QUESTIONS CONTAINING ASSUMED FACTS**

The law allows expert witnesses to be asked questions that are based on assumed facts. These are sometimes called "hypothetical questions."

In determining the weight to give to the expert's opinion that is based on the assumed facts, you should consider whether the assumed facts are true.

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION NO.  33**

**CORPORATIONS ACTS THROUGH ITS OFFICERS AND EMPLOYEES**

Plaintiff PAI and Defendant ISSi are corporations.  A corporation can act only through its officers and employees.  Any act or omission of an officer or employee within the scope of authority or employment is in law the act or omission of such corporation.

United States District Court

For the Northern District of California

**JURY INSTRUCTION NO.  34**

**ELEMENTS OF TORT**

The definition of tort is a large subject area in litigation, in which a victim (e.g., plaintiff) generally seeks money from some person, or some corporation, who harmed the victim.  Tort law is the name given to a body of law that creates, and provides remedies for, civil wrongs that do not arise out of contractual duties.  A person who is legally injured may be able to use tort law to recover damages from someone who is legally responsible, or "liable," for those injuries. Generally speaking, tort law defines what constitutes a legal injury, and establishes the circumstances under which one person may be held liable for another's injury.

There are four elements to a tort:

1.      Duty.  The defendant must owe a legal duty to the victim.  A duty is a legally enforceable obligation to conform to a particular standard of conduct.  Except in malpractice and strict liability cases, the duty is set by what a "reasonable man of ordinary prudence" would have done. There is a general duty to prevent foreseeable injury to a victim.

2.      Breach of the duty.  The defendant breached that duty.

3.      Causation.  The breach was the cause of an injury to the victim.  The causation does not need to be direct: defendant's act (or failure to act) could begin a continuous sequence of events that ended in plaintiff's injury, a so-called "proximate cause".

4.      Injury.  There must be an injury. In most cases, there must be a physical or financial injury to the victim, but sometimes emotional distress, embarrassment, or dignitary harms are adequate for recovery.

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION NO. 35**

**TYPES OF TORTS**

Torts can be categorized in a number of ways: one such way is to divide them into Negligence Torts, and Intentional Torts.

The dominant action in tort is negligence. The tort of negligence provides a cause of action leading to damages, or to injunctive relief, in each case designed to protect legal rights, including those of personal safety, property, and, in this case, intangible economic interests.

Intentional torts are any intentional acts that are reasonably foreseeable to cause harm to an individual, or entity.

In this case, the following are negligence tort claims:

Negligent Interference with Prospective Economic Advantage (All Defendants)

In this case, the following are intentional tort claims:

Breach of Fiduciary Duty (McCloy)

Misappropriation of Trade Secrets (All Defendants)

Fraud (All Defendants)

Intentional Interference with Prospective Economic Advantage (All Defendants)

**JURY INSTRUCTION NO. 36**

**RELIANCE ON GOOD CONDUCT OF OTHERS**

Every person has a right to expect that every other person will use reasonable care and will not violate the law, unless he or she knows, or should know, that the other person will not use reasonable care or will violate the law.

**JURY INSTRUCTION NO.  37**

**NEGLIGENCE**

Negligence is the failure to use reasonable care to prevent harm to oneself or to others. A person can be negligent by acting or by failing to act. A person is negligent if he or she does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation.

You must decide how a reasonably careful person would have acted in Defendants situation.

**JURY INSTRUCTION NO.  38**

**CAUSATION: MULTIPLE CAUSES**

A person's negligence may combine with another factor to cause harm.  If you find that defendant's negligence was a substantial factor in causing Plaintiff's harm, then Defendants are responsible for the harm.  Defendants cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in causing Plaintiff's harm.

**JURY INSTRUCTION NO. 39**

**INTENTIONAL - DEFINED**

A person acts with "intent" or "intentionally" when he or she desires to cause consequences of that act, or when he or she believes that the consequences are substantially certain to result from the act.

United States District Court

For the Northern District of California

**JURY INSTRUCTION NO.  40**

**TORT DAMAGES - LIABILITY ESTABLISHED**

If you decide that Plaintiff was harmed and that Defendants' wrongful conduct was a substantial factor in causing the harm, you also must decide how much money will reasonably compensate Plaintiff for the harm. This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by Defendants' wrongful conduct, even if the particular harm could not have been anticipated.

Plaintiff has the burden of proving damages by the preponderance of the evidence.  Plaintiff does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

**JURY INSTRUCTION NO. 41**

**CAUSATION - TORT CLAIMS**

Plaintiff is entitled to compensatory damages only for harms that it proves were "caused" by wrongful conduct by the Defendants. Plaintiff has the burden of proving such "causation" - which it must prove by a preponderance of the evidence. Under the law, wrongful conduct that was a substantial factor in bringing about compensable harms is deemed to have caused those harms.

**United States District Court**

For the Northern District of California

**JURY INSTRUCTION NO.  42**

**DEFINITION OF "SUBSTANTIAL FACTOR" IN TORT CLAIMS**

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm. Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

**JURY INSTRUCTION NO.  43**

**BREACH OF FIDUCIARY DUTY -- ESSENTIAL ELEMENTS**

Plaintiff claims that it was harmed because Defendant McCloy breached her fiduciary duty to Plaintiff.  To establish this claim, Plaintiff must prove by a preponderance of the evidence all of the following:

1.      The existence of a fiduciary duty;

2.      The breach of that duty; and

3.      That Defendant McCloy's breach of that duty proximately caused Plaintiff's harm.

**JURY INSTRUCTION NO.  44**

**EXISTENCE OF FIDUCIARY DUTY**

Fiduciary duties may be created by law or by agreement.  One of the fiduciary relationships imposed by law is the relationship between a corporation and its officers and directors.

Where a fiduciary relationship exists, a corporate officer owes a duty of loyalty and a duty of due care to the corporation.

**United States District Court**

For the Northern District of California

**JURY INSTRUCTION NO. 45**

**BREACH OF FIDUCIARY DUTY- DEFINITION OFFICER**

In order to establish the existence of a fiduciary duty, the plaintiff must establish by a preponderance of the evidence that McCloy was an officer who participated in the management of the corporation and exercised some discretionary authority. Officers normally manage the day-to-day operations of the business of the corporation pursuant to provisions of the bylaws or delegation of the company's Board of Directors.

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION NO.  46**

**PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT AGAINST DEFENDANT MCCLOY**

Plaintiff claims that it was harmed by Defendant McCloy's breach of three (3) separate contracts:

1.      Employment Contract.

2.      Confidentiality Agreements.

3.      Trade Secrets Agreement.

**JURY INSTRUCTION NO.  47**

**PLAINTIFF'S CLAIM FOR BREACH OF EMPLOYMENT CONTRACT**

Plaintiff claims that it was harmed by Defendant McCloy's breach of her Employment Agreement.

To establish this claim, Plaintiff must prove by a preponderance of the evidence the following:

     1.     Plaintiff and Defendant McCloy entered into a contract.

     2.     Plaintiff did all, or substantially all, of the significant things that the contract required it to do or that it was excused from doing those things.

     3.     All conditions required by the contract for Defendant McCloy's performance had occurred.

     4.     Defendant failed to perform her duties under the contract

     5.     Due to Defendant McCloy's breach, Plaintiff was harmed.

**United States District Court**

For the Northern District of California

**JURY INSTRUCTION NO.  48**

**EMPLOYMENT CONTRACT - DEFINITION**

A contract of employment is a contract by which one person, called the employer, engages another person, called the employee, to do something for the benefit of the employer or a third person for which the employee receives compensation.  The contract may be oral or written.

**JURY INSTRUCTION NO.  49**

**EMPLOYMENT CONTRACT - TERMINATION - DURATION**

An employment contract having no specified term may be terminated at will by the employer by giving notice to the employee, unless the employer and the employee have expressly agreed that the employee will not be discharged except for good cause.

**JURY INSTRUCTION NO.  50**

**PLAINTIFF'S CLAIM FOR BREACH OF CONFIDENTIALITY CONTRACT**

Plaintiff claims that it was harmed by Defendant McCloy's breach of her Confidentiality Agreements.  To establish this claim, Plaintiff must prove by a preponderance of the evidence the following:

1.    Plaintiff and Defendant McCloy entered into a contract to maintain information confidential.

2.    Plaintiff did all, or substantially all, of the significant things that the contract required it to do or that it was excused from doing those things.

3.    All conditions required by the contract for Defendant McCloy's performance had occurred.

4.    Defendant McCloy failed to keep Plaintiff's confidential information confidential and disclosed such information to unauthorized third parties.

5.    Due to Defendant McCloy's breach, Plaintiff was harmed.

**JURY INSTRUCTION NO.  51**

**PLAINTIFF'S CLAIM FOR BREACH OF TRADE SECRETS CONTRACT**

Plaintiff claims that it was harmed by Defendant McCloy's breach of the Trade Secrets Agreement.  To establish this claim, Plaintiff must prove by a preponderance of the evidence the following:

1.      Plaintiff and Defendant McCloy entered in a contract to maintain Plaintiff's trade secrets confidential.

2.      Plaintiff did all, or substantially all, of the significant things that the contract required it to do or that it was excused from doing those things.

3.      All conditions required by the contract for Defendant McCloy's performance had occurred.

4.      Defendant McCloy failed to keep Plaintiff's trade secrets confidential and disclosed such information to unauthorized third parties.

5.      Due to Defendant McCloy's breach, Plaintiff was harmed.

**JURY INSTRUCTION NO.  52**

**PLAINTIFF'S CLAIM FOR MISAPPROPRIATION OF TRADE SECRETS**

Plaintiff claims that it was harmed by Defendants improper taking and use of its trade secrets.  To establish this claim, Plaintiff must prove by a preponderance of the evidence the following:

1.      Plaintiff owns the trade secrets it claims;

2.      Defendants improperly obtained, possessed, and used those trade secrets;

3.      Defendants' use of those trade secrets harmed Plaintiff.

**United States District Court**

For the Northern District of California

**United States District Court**

For the Northern District of California

**JURY INSTRUCTION NO.  53**

**MISAPPROPRIATION OF TRADE SECRETS- INTRODUCTION**

Plaintiff claims that it is the owner of the following confidential and proprietary information: list of employees on site and at Plaintiff's headquarters, confidential on-site employee human resource documentation such as compensation and benefits, total compensation plans, all bid/proposal data (including cost data), methods to calculate overhead and general and administrative rates and all infrastructure documents (collectively "Proprietary Information").

Plaintiff claims that the Proprietary Information are trade secrets and that Defendants "misappropriated" them.

"Misappropriation" means the improper acquisition, use, or disclosure of the trade secrets.

Plaintiff also claims that the Defendants' misappropriation caused it harm.

**JURY INSTRUCTION NO.  54**

**MISAPPROPRIATION OF TRADE SECRETS - DEFINITION - TRADE SECRETS**

A trade secret consists of information, including a formula, pattern, compilation, program, device, method, technique or process that:

1.      derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

2.      is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

**JURY INSTRUCTION NO.  55**

**PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT AGAINST DEFENDANT ISSI**

On Plaintiff's claim that Defendant ISSi breached its Subcontract with Plaintiff, Plaintiff has the burden of proving each of the following by a preponderance of the evidence:

1.　　Plaintiff and Defendant ISSi entered into a contract;

2.　　Plaintiff did all, or substantially all, of the significant things that the contract required it to do or that it was excused from doing those things;

3.　　All conditions required by the contract for Defendant ISSi's performance had occurred;

4.　　Defendant ISSi failed to do something that the contract required it to do; and

5.　　Plaintiff was harmed by this failure.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO.  56**

**CONTRACT INTERPRETATION**

Plaintiff PAI and Defendant ISSi entered into a contract referred to in this case as the Subcontract.  One of the provisions at issue in this case is paragraph 4.7 of the Subcontract. The Court has determined that the language contained in this provision is unambiguous and must be interpreted as follows:

Section 4.7 prohibits any solicitation whatsoever by Defendant ISSi of any employee of

Plaintiff PAI who was working on the Subcontract.

The Court has also determined that under this interpretation of Section 4.7, the letters that were sent to PAI employees Amy Johnson, Chander Sujan, and Rob Clark by Issi constitute solicitation.

**United States District Court**

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO.  57**

**DEFINITIONS - CAUSATION IN CONTRACT CASES**

The test for causation in a breach of contract action is whether the breach was a substantial factor in causing the damages.

The term "substantial factor" has no precise definition, but it means more than a slight, trivial, negligible, or theoretical factor in producing a particular result.

**JURY INSTRUCTION NO.  58**

**GENERAL DAMAGES/BREACH OF CONTRACT**

The measure of general damages for the breach of a contract is that amount which will compensate the injured party for all the detriment caused by the breach, or which in the ordinary course of things, would be likely to result therefrom.  The injured party should receive those damages naturally arising from the breach, or those damages which might have been reasonably contemplated or foreseen by both parties, at the time they made the contract, as the probable result of the breach.  As nearly as possible, the injured party should receive the equivalent of the benefits of performance.

Damages must be reasonable. Plaintiff cannot recover a greater amount as damages than it could have gained by the full performance of the contract.

**United States District Court**

For the Northern District of California

## JURY INSTRUCTION NO.  59

## PLAINTIFF'S CLAIM FOR FRAUD

In the broadest sense, a fraud is a deception made for personal gain. The specific legal definition varies by legal jurisdiction.  Fraud is a crime, and is also a civil law violation.  The Plaintiff seeks to recover damages based upon a claim of fraud.

Conduct may be fraudulent because of an intentional misrepresentation, concealment, a false promise or a negligent misrepresentation.

**JURY INSTRUCTION NO.  60**

**INTENTIONAL MISREPRESENTATION**

Plaintiff claims that Defendants made a false representation that harmed it. To establish this claim, Plaintiff must prove by a preponderance of the evidence all of the following:

1.      That Defendants represented to Plaintiff that an important fact was true;

2.      That Defendants' representation was false;

3.      That Defendants knew that the representation was false when they made it, or that they made the representation recklessly and without regard for its truth;

4.      That Defendants intended that Plaintiff rely on the representation;

5.      That Plaintiff reasonably relied on Defendants' representation;

6.      That Plaintiff was harmed; and

7.      That Plaintiff's reliance on Defendants' representation was a substantial factor in causing its harm.

**JURY INSTRUCTION NO.  61**

**CONCEALMENT**

Plaintiff claims that it was harmed because Defendants concealed certain information.  To establish this claim, Plaintiff must prove by a preponderance of the evidence all of the following:

1.    That Defendants intentionally failed to disclose an important fact that was known only to them and that Plaintiff could not have discovered;

2.    That Plaintiff did not know of the concealed fact;

3.    That Defendants intended to deceive Plaintiff by concealing the fact;

4.    That Plaintiff reasonably relied on Defendants' deception;

5.    That Plaintiff was harmed; and

6.    That Defendants' concealment was a substantial factor in causing Plaintiff's harm.

United States District Court

For the Northern District of California

67

**JURY INSTRUCTION NO. 62**

**FRAUD AND DECEIT - NONDISCLOSURE OF KNOWN FACTS**

Except as you may otherwise be instructed, where material facts are known to one party and not to the other, failure to disclose them is not actionable fraud unless there is some relationship between the parties which gives rise to a duty to disclose known facts.

A duty to disclose known facts arises where the party having knowledge of the facts is in a fiduciary or a confidential relationship with the other party.

A fiduciary or a confidential relationship exists whenever under the circumstances trust and confidence reasonably may be and is reposed by one person in the integrity and fidelity of another.

A duty to disclose known facts arises in the absence of a fiduciary or a confidential relationship where one party knows of material facts and also knows that these facts are neither known nor readily accessible to the other party.

United States District Court
For the Northern District of California

68

**JURY INSTRUCTION NO.  63**

**FALSE PROMISE**

Plaintiff claims that it was harmed because Defendants made a false promise.  To establish this claim, Plaintiff must prove by a preponderance of the evidence all of the following:

1.      That Defendants made a promise to Plaintiff;

2.      That this promise was important to the transaction;

3.      That Defendants did not intend to perform the promise when they made it;

4.      That Defendants intended that Plaintiff rely on the promise;

5.      That Plaintiff reasonably relied on Defendants' promise;

6.      That Defendants did not perform the promised act;

7.      That Plaintiff was harmed; and

8.      That Plaintiff's reliance on Defendants' promise was a substantial factor in causing its harm.

**JURY INSTRUCTION NO.  64**

**FRAUD AND DECEIT - PROOF OF INTENT NOT TO PERFORM**

You may consider the conduct of a party making a promise, either before or after the promise was made, in determining whether there was an intention not to perform the promise when made.

United States District Court

For the Northern District of California

**JURY INSTRUCTION NO.  65**

**NEGLIGENT MISREPRESENTATION**

Plaintiff claims that it was harmed because Defendants negligently misrepresented important fact.  To establish this claim, Plaintiff must prove by a preponderance of the evidence all of the following:

1.    That Defendants represented to Plaintiff that an important fact was true;

2.    That Defendants' representation was not true;

3.    That Defendants had no reasonable grounds for believing the representation was true when they made it;

4.    That Defendants intended that Plaintiff rely on this representation;

5.    That Plaintiff reasonably relied on Defendants' representation;

6.    That Plaintiff was harmed; and

7.    That Plaintiff's reliance on Defendants' representation was a substantial factor in causing its harm.

**JURY INSTRUCTION NO.  66**

**FRAUD AND DECEIT - RELIANCE**

To establish fraud by a false representation or promise, the Plaintiff must establish by a preponderance of the evidence reliance upon the representation or promise; that is, the representation or promise must have caused Plaintiff's conduct in entering into the transaction and without this representation or promise Plaintiff would not have entered into the transaction.

The fraud, if any, need not be the sole cause if it appears that reliance upon the representation or promise substantially influenced that party's action, even though other influences operated as well.

**United States District Court**

For the Northern District of California

**JURY INSTRUCTION NO.  67**

**FRAUD AND DECEIT - RIGHT TO RELY**

     To establish fraud by a false representation or promise, Plaintiff must not only act in reliance on it, but must be justified in that reliance, that is, it was reasonable in the light of the circumstances and Plaintiff's intelligence, experience and knowledge, to accept the representation or promise without making an independent inquiry or investigation.

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION NO. 68**

**DAMAGES – BENEFIT-OF-THE-BARGAIN RULE**

If you decide that Plaintiff has proved its fraud claim against Defendants, you also must decide how much money will reasonably compensate Plaintiff for the harm. This compensation is called "damages."

The amount of damages must include an award for all harm that Defendants was a substantial factor in causing, even if the particular harm could not have been anticipated.

Plaintiff must prove the amount of its damages. However, Plaintiff does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

To determine the amount of damages, you must:

1.      Determine the value that Plaintiff would have received if the representations made by Defendants had been true; and

2.      Subtract the value of what it did receive.

The resulting amount is Plaintiff's damages. The value must be determined as of the date that Plaintiff discovered Defendants' fraudulent conduct.

Plaintiff may also recover amounts that it reasonably spent in reliance on Defendants' fraudulent conduct if those amounts would not otherwise have been spent.

**JURY INSTRUCTION NO. 69**

**PLAINTIFF'S CLAIM FOR VIOLATION OF CALIFORNIA BUSINESS &**

**PROFESSIONAL CODE §17200 – UNFAIR COMPETITION**

Plaintiff alleges that Defendants engaged in unfair competition. In order to prevail on this claim, Plaintiff must prove the following by the preponderance of the evidence:

1.   The alleged practice is unlawful (i.e., is forbidden by law); or

2.   The alleged practice is unfair (i.e., harm to victim outweighs any benefit); or

3.   The alleged practice is fraudulent (i.e., is likely to deceive members of the public).

In the context of direct competition between competitors, "unfair competition" is defined as conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition. The determination of whether a particular business practice is unfair necessarily involves an examination of its impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer.

Plaintiff claims that Defendants committed acts of unfair competition by engaging in one or more of the following practices:

1.   fraud;

2.   committed conflicts of interest;

3.   misappropriation and disclosure of confidential and proprietary Plaintiff information to compete against Plaintiff;

4.   solicitation of Plaintiff's employees in violation of the parties' written agreements;

5.   tortious interference with Plaintiff's prospective economic advantage with NASA.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION NO. 70**

**INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

Plaintiff claims that Defendants intentionally interfered with an economic relationship between Plaintiff and NASA that probably would have resulted in an economic benefit to Plaintiff. To establish this claim, Plaintiff must prove by a preponderance of the evidence all of the following:

1.     Plaintiff and NASA were in an economic relationship that probably would have resulted in an economic benefit to Plaintiff;

2.     Defendants knew of the relationship;

3.     Defendants engaged in wrongful conduct;

4.     The relationship was disrupted;

5.     Plaintiff was harmed; and

6.     Defendants' wrongful conduct was a substantial factor in causing Plaintiff's harm.

**JURY INSTRUCTION NO.  71**

**NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

Plaintiff claims that Defendants negligently interfered with a relationship between it and NASA that probably would have resulted in an economic benefit to Plaintiff.  To establish this claim, Plaintiff must prove by a preponderance of the evidence all of the following:

1.     Plaintiff and NASA were in an economic relationship that probably would have resulted in a future economic benefit to Plaintiff;

2.     Defendants knew of this relationship;

3.     Defendants knew or should have known that this relationship would be disrupted if they failed to act with reasonable care;

4.     Defendants failed to act with reasonable care;

5.     Defendants engaged in wrongful conduct;

6.     The relationship was disrupted;

7.     That Plaintiff was harmed; and

8.     That Defendants' wrongful conduct was a substantial factor in causing Plaintiff's harm.

**JURY INSTRUCTION NO.  72**

**INTENT –  ECONOMIC INTERFERENCE**

In deciding whether Defendants acted intentionally, you may consider whether they knew that a disruption was substantially certain to result from their conduct.

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION NO.  73**

**WRONGFUL CONDUCT –  DEFINED**

"Wrongful conduct" is conduct that is wrongful separate and apart from the fact that the conduct interfered with or disrupted the economic relationship between the Plaintiff and NASA.

An act is independently wrongful if it unlawful or otherwise proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard.

Here, the wrongful conduct alleged is breach of contract, breach of fiduciary duty, misappropriation of trade secrets, fraud and unfair competition.   The legal standards for these claims are set forth elsewhere in the jury instructions.

**JURY INSTRUCTION NO. 74**

**INTERFERENCE CLAIMS – DAMAGES**

If you find that Plaintiff is entitled to a verdict against Defendants based upon the claim of interference with prospective economic advantage, you should then award plaintiff damages in an amount that will reasonably compensate Plaintiff for all loss or harm, providing that you find it was or will be suffered by Plaintiff and caused by the Defendants' conduct.  The amount of your award should include:

    1.      The financial loss of the benefits of the prospective economic relationship;

    2.      Actual harm to reputation if it was reasonably to be expected to result from the interference;

    3.      Consequential losses caused by the interference.

**United States District Court**

For the Northern District of California

**JURY INSTRUCTION NO.  75**

**ECONOMIC DAMAGES**

The damages claimed by plaintiff PAI Corporation for the harm caused by Defendants are called economic damages.

"Economic damages" means objectively verifiable monetary losses such as loss profits, or loss of business opportunities.

United States District Court

For the Northern District of California

**JURY INSTRUCTION NO. 76**

**LOST PROFITS (ECONOMIC DAMAGE)**

To recover damages for lost profits, Plaintiff must prove it is reasonably certain it would have earned profits but for Defendants' conduct.

To decide the amount of damages for lost profits, you must determine the gross amount Plaintiff would have received but for Defendants' conduct and then subtract from that amount the expenses Plaintiff would have had if Defendants' conduct had not occurred.

The amount of the lost profits need not be calculated with mathematical precision, but there must be a reasonable basis for computing the loss.

United States District Court

For the Northern District of California

**United States District Court**

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURY INSTRUCTION NO.  77**

**SPECIAL DAMAGES**

Plaintiff claims damages for the cost of preparing the OSIHM and ES Proposals.  These are called "special damages."

To recover for this harm, Plaintiff must prove in addition to other elements applicable to a claim for damages that when the parties made the contract, ISSi knew or reasonably should have known of the special circumstances leading to such harm.

**JURY INSTRUCTION NO.  78**

**AWARD OF PUNITIVE DAMAGES**

If you find for the Plaintiff, you may, but are not required to, award punitive damages.  The purposes of punitive damages are not to compensate a plaintiff, but to punish a defendant and to deter a defendant and others from committing similar acts in the future.

The plaintiff has the burden of proving that punitive damages should be awarded, and the amount, by a preponderance of the evidence. You may award punitive damages only if you find that the defendant's conduct was malicious, oppressive or in reckless disregard of the plaintiff's rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring another.  Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law.  An act or omission is oppressive if the person who performs or fails to perform it injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by the misuse or abuse of authority or power or by the taking advantage of some weakness or disability or misfortune of the plaintiff.

**JURY INSTRUCTION NO.  79**

**BREACH OF CONTRACT - COUNTERCLAIM BY ISSI**

Defendant ISSi claims that it was harmed by Plaintiff's breach of the Subcontractor Agreement by failing to pay ISSi sums owing under the Subcontract Agreement.  To establish this claim, Defendant bears the burden to prove by the preponderance of the evidence the following:

1.      Plaintiff and Defendant ISSi entered into a contract.

2.      Defendant did all, or substantially all, of the significant things that the contract required it to do or that it was excused from doing those things.

3.      All conditions required by the contract for Plaintiff's performance had occurred.

4.      Plaintiff failed to perform its duties under the contract.

5.      Due to Plaintiff's failure to perform, Defendant ISSi was harmed.

**United States District Court**

For the Northern District of California