# REDACTED VERSION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

*FILED MAY 13 2015 RICHARD W. WIEKING CLERK, U.S. DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA*

| | |
|---|---|
| PAI CORPORATION,<br><br>　　　　Plaintiff,<br><br>v.<br><br>INTEGRATED SCIENCE SOLUTIONS, INC., et al.,<br><br>　　　　Defendants. | Case No. 06-cv-05349-JCS<br><br>**ORDER GRANTING MOTION FOR JUDICIAL RELIEF FOR PLAINTIFF'S BREACH OF SETTLEMENT AGREEMENT**<br><br>Re: Docket No. 319<br><br>~~FILED UNDER SEAL~~ |

## I. INTRODUCTION

On January 6, 2010, Plaintiff PAI Corporation ("PAI") and Defendants Integrated Science Solutions, Inc. ("ISSi") and Defendant Cecelia McCloy ("McCloy") entered into a settlement agreement ("the Settlement Agreement") that resolved all of the claims in this action. Accordingly, on February 10, 2010, the Court entered an order of dismissal of this action, pursuant to the stipulation of the parties, retaining jurisdiction to enforce the terms of the Settlement Agreement. Defendants McCloy and ISSi now bring a Motion for Judicial Relief for Plaintiff's Breach of Settlement Agreement ("the Motion"). A hearing on the Motion was held on Friday, March 20, 2015 at 9:30 a.m.[1] McCloy and ISSi filed supplemental materials in support of the Motion on March 27, 2015. For the reasons stated below, the Motion is GRANTED.

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

## II. BACKGROUND

### A. Procedural Background

In August 2006, PAI initiated this action against ISSi and McCloy. PAI is a Tennessee corporation that was founded in 1983 by Doan Phung, an expert in nuclear engineering and environmental sciences. Complaint at 1, 3. PAI generated most of its revenues by bidding for governmental safety and environmental services projects from various government agencies, including NASA. *Id.* ISSi is a California corporation that was founded by Cecelia McCloy, a citizen of California, in March 1999. Complaint at 4. The dispute arose out of a NASA contract ("the OSIHMES Contract") on which PAI was prime contractor and ISSi was subcontractor, with Cecelia McCloy acting as program manager. *See* Docket No. 101 at 2. PAI asserted claims for, *inter alia*, breach of contract, breach of fiduciary duty, misappropriation of trade secrets and negligent and intentional interference with the OSIHMES Contract. ISSi and McCloy asserted counterclaims for breach of the subcontract, libel and slander. *See* Docket No. 9.

Following an eight-day jury trial, on October 29, 2008, a verdict was entered in favor of Plaintiff PAI Corporation. Docket No. 212. The jury found in favor of PAI and awarded $2,130,845 in damages, but the Court subsequently granted in part Defendants' motion for judgment as a matter of law ("JMOL Motion"), finding that there was insufficient evidence to support the jury's verdict on some of Plaintiff's claims. Docket No. 280. The Court also ordered a new trial on damages because the verdict did not allocate damages for specific claims. *Id.* PAI appealed the JMOL Order, but the Ninth Circuit rejected the appeal, finding it did not have jurisdiction because the JMOL Order was not a final appealable order. Docket No. 298. The Court then set a new trial for March 2010. Docket No. 299. Before the new trial was held, however, the parties entered into a settlement agreement, dated January 6, 2010. *See* Declaration of Patricia A. Meagher in Support of Defendant and Counterclaimant Integrated Science Solution, Inc.'s and Defendant Cecelia McCloy's Motion for Judicial Relief for Plaintiff's Breach of Settlement Agreement ("Meagher Motion Decl."), Ex. A (Settlement Agreement). A stipulated dismissal was entered on February 10, 2010 under which the Court retained jurisdiction to enforce the terms of the Settlement Agreement. Docket No. 312.

2

**B. The Settlement Agreement**

In the Settlement Agreement, ISSi and McCloy agreed to pay to PAI a total sum of ███ with the first ███ ███ ███ Meagher Motion Decl., Ex. A ¶ 1. ███

...

...

3

### C. The Motion

In the Motion, ISSi and McCloy contend PAI has breached the terms of the Settlement Agreement by closing out the OSIHMES contract with NASA without giving ISSi notice that the contract was being closed out or including the final invoices for ISSi's unreimbursed indirect costs on the OSIHMES contract, resulting in a loss of at least $254,077.69. Motion at 2-3; Reply at 1. According to ISSi, the OSIHMES Contract "was a cost reimbursement contract, meaning that NASA paid PAI (and ISSi as PAI's subcontractor) for the actual costs incurred in performing the contract work (rather than a fixed price)." *Id.* ISSi further states that "[t]he actual costs incurred by ISSi in performing the subcontract were submitted by ISSi to PAI by invoice, and PAI in turn, would mark-up and incorporate the ISSi invoices into its own invoices and submit to NASA for reimbursement on a regular basis." *Id.*[2] Final invoices, such as the invoices at issue here, "are generally paid as part of NASA's contract close-out procedures which are set forth in federal regulations including Federal Acquisition Regulation ("FAR") 4.804, 48 C.F.R. §4.804, and NASA FAR Supplement Part 1804.804, 48 C.F.R. §1804.804." Motion at 4. ISSi asserts that "[b]ecause of backlog, contract closeout may occur years after completion of the actual contract work." *Id.*

ISSi's final invoices under the OSIHMES Contract, which ISSi contends are included in the ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ are Invoices 931, 932 and 933. Declaration of Carlin Gill in Support of Defendant and Counterclaimant Integrated Science Solution, Inc.'s and Defendant Cecelia McCloy's Motion ("Gill Decl.") ¶ 3 (▊▊▊▊▊ ▊▊▊▊▊▊▊▊▊▊ ▊▊ referred to Invoice 933); Supplemental Declaration of Cecelia McCloy in Support of ISSi's and McCloy's Reply to PAI Corp.'s Opposition to ISSi's and McCloy's Motion for Judicial Relief for Breach of Settlement Agreement ("McCloy Supp. Decl.")

---

[2] In a footnote, ISSi explains further:

> Specifically, the invoices included actual direct costs that were incurred during the billing period and estimated indirect costs. Indirect costs were billed on an estimated basis, to be reconciled with actual indirect costs after government audit.

Motion at 3 n. 1.

4

1  ¶ 3 (███████████████████████████████
2  ████████████████████████████). The largest invoice, Invoice 933,
3  was for $254,077.69. Invoice 931 was for $8,530.71 and Invoice 932 was for $5,635. At the
4  Motion hearing, ISSi and McCloy stipulated that they would drop their claims for all amounts
5  other than the amount sought in Invoice 933 for the purposes of the instant Motion.
6         According to McCloy, the amount in Invoice 933 represented the difference between the
7  provisional (estimated) indirect cost rates that were billed by ISSi during performance of the
8  OSIHMES Contract and the "actual or final indirect costs [that] were established, as required by
9  the regulations, by the NASA Contracting Officer after audit by [Defense Contract Audit Agency
10 ("DCAA")." McCloy Supp. Decl. ¶¶ 3, 5. Evidence offered by ISSi indicates that it sent Invoice
11 933 (as well as Invoices 931 and 932) to PAI in April 2009 with a request that it be "forwarded to
12 NASA for payment prior to Contract close-out." *See* Supplemental Declaration of Carlin Gill in
13 Support of ISSi's and McCloy's Reply to PAI Corp.'s Opposition to ISSi's and McCloy's Motion
14 for Judicial Relief for Breach of Settlement Agreement ("Gill Supp. Decl."), Ex. 3 (letter, with
15 Invoices 931-933 attached, from ISSi to PAI CEO Doan Phung and Accounting Supervisor Bruce
16 Williams, dated April 30, 2009, stating "[w]e understand that PAI Corporation has not yet
17 submitted its final invoice to NASA on [the OSIHMES Contract] and that the Contract has yet to
18 be closed out"). A letter in response from PAI, dated July 30, 2009, stated that the invoices were
19 "noncompliant with the contract" and asked ISSi to resubmit the "closeout accounting" according
20 to detailed instructions from PAI. *Id.*, Ex. 4. A letter dated August 12, 2009 from ISSi to PAI
21 indicates that the invoices were resubmitted to PAI and that they reflected that PAI owed ISSi a
22 total of $264,094.20 plus interest. *Id.* Ex. 5. At the Motion hearing, PAI represented that Invoice
23 933 was forwarded to NASA in 2009, before the parties entered into the Settlement Agreement.
24 As discussed below, however, PAI's accounting supervisor told ISSi in December 2014 that
25 Invoice 933 was *not* submitted to NASA with PAI's close-out paperwork.
26        It is undisputed that at the time the parties entered into the Settlement Agreement, in
27 ███████ NASA had not yet begun the close-out of the OSIHMES Contract and that NASA
28 did not close out the contract until May 2014. *See* Gill Decl., Ex. B (email from Bruce Williams

5

of PAI to Carlin Gill dated December 22, 2014 stating that "NASA closed the contract in May of this year"). Yet ISSi never received any notification from PAI that NASA was going forward with the close-out process, it asserts; nor did PAI forward to ISSi any correspondence from NASA in connection with the close-out. Motion at 4.

When ISSi's Chief Financial Officer, Carlin Gill, contacted PAI, on September 29, 2014, to inquire about the status of the OSIHMES Contract close-out, she received the following response, dated December 17, 2014, from PAI's Accounting Supervisor, Bruce Williams:

> The only amount that I am authorized to pay ISSi is the retained fee amount of $5,634.78 that remains on our books as being owed to ISSi. If you could please get the attached filled in (with ISSi address, contract #, signatures), and send it back to me, I can send you out a check for this retained fee amount before the end of the year, to address on your e-mail below.

Gill Decl., Ex. B. Gill sent a follow-up email, dated December 19, 2014, stating that ISSi assumed the OSIHMES contract had not been closed out because PAI had not forwarded any correspondence from NASA and asking for confirmation that this assumption was correct. *Id.*

███████████████████████████

█████████ On December 21, 2014, Williams sent Gill an email stating that the contract had "indeed been closed out" and, after a request for further clarification, sent Gill an email on December 22, 2014, stating as follows:

> NASA closed the contract in May of this year. Since PAI stopped bidding on gov't business in mid 2012 and ended its last contract Dec 31, 2012, we have had very little activity and I have just been helping out a few hours a month to transact what little business is necessary. That is why it has taken so long to approach you about paying ISSi their retained fee. We would like to go into 2015 without liabilities hanging on, so would like to pay this to you before the end of this year.
>
> No, neither I nor our majority owner, Thu-le Doan (who is running things now since Mr. Phung is mostly retired), were aware of your invoice #933 when I filled out the closeout paperwork and she signed it. Since it has been so many years and I had not seen any communication from ISSi about the contract for many years, I thought there was nothing still hanging.

*Id.*

ISSi and McCloy assert that by failing to forward correspondence from NASA informing

PAI of the contract close-out and failing to include Invoice 933 in the close-out paperwork it submitted to NASA in 2014, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Motion at 2; Reply at 2-3. As a result of the breach, ISSi and McCloy ask the Court to award: 1) sanctions under the Court's inherent power, in the amount of ▇▇▇▇ the basis that PAI's breach of the Settlement Agreement also violated the Court's February 10, 2010 order dismissing the case pursuant to the Settlement Agreement; 2) damages in the amount of ▇▇▇▇ because ISSi has now lost the opportunity to obtain payment on Invoice 933; 3) an order relieving McCloy and ISSi of any further obligation to make payments under the Settlement Agreement, or at least suspending that obligation until further order of the Court; and 4) an award of fees and costs incurred in connection with the instant motion.[3]

In connection with the damages requested, ISSi and McCloy assert that there is a high likelihood that if Invoice 933 had been submitted to NASA during the close out process, it would have been paid. Reply at 6-7. First, as stated in the McCloy Supplemental Declaration, "all ISSi subcontract invoices for costs incurred under the OSIHMES contract were, with minor adjustments, reimbursed." McCloy Supp. Decl. ¶ 8. Second, "DCAA audited ISSi's indirect costs for the period in which ISSi performed subcontract work under the OSIHMES contract and, based on the DCAA audit, ISSi's indirect cost rates were finalized and ISSi was entitled to reimbursement of an additional $254,077.69." Id.

D.  PAI's Opposition

In it Opposition brief, PAI accuses ISSi and McCloy of "dropp[ing] the ball" and "merely looking for an excuse to repudiate the ▇▇▇▇ Settlement Agreement." Opposition at 1. PAI cites the language in the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ stating that it ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Id. at 2. Nor did PAI have any obligation to even present ISSi's claim to NASA, PAI contends. Id. PAI

---

[3] In the Motion, ISSi and McCloy also asked the Court to order PAI to release the retained fee amount of $5,634.78, which appears to correspond to Invoice 932. At the Motion hearing, however, they stipulated that they would limit their request for damages to Invoice 933.

7

also asserts it never received any notice from ISSi that it intended to pursue the ███ ██████████ ██ *Id.* at 4. In particular, in a declaration offered in support of PAI's opposition brief, Doan Phung states as follows:

> From the time the parties executed the Settlement Agreement in January of 2010, until about two months ago, PAI had received **absolutely no communication** or notice from ISSi that ISSi intended to pursue the ████ ███████ ██ During the entire period of approximately five (5) years, ISSi had never once mentioned to PAI that ISSi intended to pursue said ██████████ ██ Nor has ISSi ever asked, even to this day, that PAI cooperate or facilitate in any way with respect to any effort by ISSi to pursue reimbursement from NASA.

Declaration of Doan Phung in Opposition to ISSi's and McCloy's Motion for Judicial Relief for Breach of Settlement Agreement ("Phung Decl.") ¶ 12. Phung further states that Williams was not "made aware of, and did not know about the specific terms of the Settlement Agreement." *Id.* ¶ 19. Similarly, Phung represents that "Mr. Williams was not aware of ISSi's Invoice 933 when he completed the closeout paperwork for PAI." *Id.* ¶ 16. PAI does not offer a declaration by Williams in support of these representations, however.

PAI also asserts that it did not violate the terms of the ████ ██████████████ ████████████ ███ ██ ████████ ██ ███████ ██ ██████ ██ ████ ██████ ██████ ███████ Opposition at 6. PAI relies on Phung's statement that he does not "recall any correspondence PAI exchanged with NASA regarding said [reimbursement] claim and, thus, PAI has nothing it was required to send to ISSi." Phung Decl. ¶ 17.

PAI further asserts that even if the Court were to find that the Settlement Agreement was breached, the Court should deny all of the remedies requested by ISSi and McCloy. First, PAI argues that ISSi has not established the amount of its damages because NASA would likely have rejected ISSi's claim. Opposition at 7-8. PAI cites Phung's statement that "[p]rior to the Settlement Agreement, PAI had repeatedly rejected ISSi's claim due to, among other reasons, exceeding contract rate ceiling and refusing to sign certification of cost fidelity . . .[and] NASA would very likely have rejected said claim on similar grounds." Phung Decl. ¶ 18. Phung further states that "at the time of PAI's closeout, NASA had run out of funds for the contract and had very

8

1  little left to pay." *Id.*

2  Second, PAI argues that contempt sanctions are unavailable because the 
Opposition at 8-9 (citing Fed. R. Civ. P 65(d), *Consumer Gas & Oil, Inc. v. Farmland Industries, Inc.*, 84 F.3d 367, 371 (10th Cir. 1996); *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 460 (7th Cir. 1993)).



Finally, PAI asserts that ISSi and McCloy should not receive an award of attorneys' fees but instead, that PAI's fees should be awarded, in the amount of $14,700. *Id.* at 10 (citing Declaration of Anna Nguyen).[4]

### III. ANALYSIS

#### A. Whether PAI Violated the Terms of the Settlement Agreement

ISSi and McCloy claim that PAI breached the Settlement Agreement by failing to submit Invoice 933 with its close-out paperwork or to notify ISSi when the close-out of the OSIHMES contract occurred, thereby depriving ISSi and McCloy of the opportunity to pursue the

The Settlement Agreement is a contract and therefore, is evaluated under California law governing contract interpretation. *Miller v. Fairchild Industries, Inc.*, 797 F.2d 727, 733 (9th Cir. 1986). In interpreting the terms of a contract, a court must consider the parties' objective intent when they entered into the contract. *See* Cal. Civ.Code § 1636. "Because California law recognizes that the words of a written instrument often lack a clear meaning apart from the context in which the words are written, courts may preliminarily consider any extrinsic evidence offered

---

[4] No declaration by Ms. Nguyen in support of PAI's request for attorneys' fees appears on the docket for this case.

by the parties." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1015 (9th Cir. 2012) (citations and quotations omitted). "If the court decides, after consideration of this evidence, that the language of a contract, in the light of all the circumstances, is fairly susceptible of either one of the two interpretations contended for, extrinsic evidence relevant to prove either of such meanings is admissible." *Id.* (citations and quotations omitted).

[redacted] Finally, it is undisputed that the final invoices that are the subject of ISSi's claims could only be pursued through PAI, the prime contractor, and would not have been addressed until NASA closed out the contract. [redacted]

### B. Request for Damages and Fees and Costs Based on Alleged Breach of Contract

Under California law, "[f]or breach of an obligation arising from contract, the measure of damages . . . is the amount that will compensate the party aggrieved for all the detriment

10

proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. Cal. Civ. Code § 3300. "The damages awarded should, insofar as possible, place the injured party in the same position it would have held had the contract properly been performed, but such damages may not exceed the benefit which it would have received had the promisor performed." *Brandon & Tibbs v. George Kevorkian Accountancy Corp.*, 226 Cal.App.3d 442, 468 (1990). "Where the fact of damages is certain, the amount of damages need not be calculated with absolute certainty." *GHK Associates v. Mayer Group, Inc.*, 224 Cal.App.3d 856, 873 (1990) (citing *Channell v. Anthony*, 58 Cal.App.3d 290, 317 (1976)). Further, "[i]t is well established that one whose wrongful conduct has rendered difficult the ascertainment of damages cannot complain because the court must make an estimate of damages rather than an exact computation." *Ramona Manor Convalescent Hospital v. Care Enterprises*, 177 Cal. App. 3d 1120, 1140 (1986) (quoting *Pacific Scientific Co. v. Glassey*, 245 Cal.App.2d 831, 842 (1966)).

Here, ISSi and McCloy ask the Court to award the amount sought in Invoice 933 of $254,077.69. They contend PAI's failure to abide by the terms of the Settlement Agreement caused damage in this amount because they were thereby deprived of seeking reimbursement from NASA *and* there is evidence that NASA would have paid the full amount, namely, the fact that DCAA had already approved the actual indirect costs requested and that NASA had paid ISSi's past invoices. Phung contends NASA would likely have rejected the request but provides few details. He also asserts that NASA's funds for the contract had run out but again, provides few details. The Court concludes that the evidence provided by ISSi and McCloy is sufficient to support the conclusion that ISSi would very likely have received at least some reimbursement for Invoice 933, even if it might have been subjected to a downward adjustment. Further, because the fact of damages is sufficiently certain, ISSi and McCloy should not be penalized for the uncertainty that has resulted from ███████████████████████ ███████ Accordingly, the Court finds that ISSi and McCloy are entitled to $254,077.69 in damages, that is, the amount sought in Invoice 933.

████████████████████████████████████

████████ *See* Docket No. 335. Therefore, the Court offsets this amount against

the damages owed by PAI on Invoice 933, with the remaining $128,077.69 to be included as part of the Court's award against PAI on the instant motion. ████████████ ████████████████

C.  **Request for Sanctions Based on Alleged Violation of Court Order**

Federal courts have "inherent" power to impose sanctions against both attorneys and parties for "bad faith" conduct in litigation or "willful disobedience" of a court order. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766-767 (1980). However, a "judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381 (1994). The Order cited by ISSi and McCloy as a basis for imposing sanctions merely dismissed the action pursuant to the stipulation of the parties. Therefore, the Court declines to impose sanctions under its inherent authority.

D.  **Request for Award of Attorney Fees**



In a supplemental declaration filed after the Motion hearing, ISSi and McCloy request attorneys' fees for a total of 52.85 hours of work by Ms. Meagher, at a rate of $385/hour. *See* Declaration of Patricia A. Meagher in Support of Defendants' Request for Attorneys' Fees and Expenses ("Second Supp. Meagher Decl.") ¶¶ 6,9. This includes 30.2 hours spent on the Motion and an additional 22.65 hours spent on the Reply brief and the additional materials requested by the Court following the hearing. *Id.* ¶¶ 6,7. They have also provided timesheets documenting their time, information about Ms. Meagher's qualifications and a declaration by Richard Pearl, who is frequently called upon to opine about the reasonableness of attorneys' fees, stating that the rate range for an attorney with the level of experience of Ms. Meagher is between $640 and $875 an hour. *Id.*, Exs. AB, C & E.

The Court finds that the hourly rate requested by Ms. Meagher is reasonable based on the

materials supplied by Plaintiffs following the Motion hearing. Based on the timesheets ISSi and McCloy have provided, the Court also finds that the requested time is reasonable with the following exception: in her original declaration, Ms. Meager stated that she incurred a total of 21 hours in preparing the Motion, *see Meagher Decl.*, ¶ 5, whereas she states in her supplemental materials that she spent 30.20 hours on the Motion. Second Supp. Meagher Decl., ¶ 6. While the Court asked ISSi and McCloy to provide additional materials in support of their fee request, it did not permit them to revise upward the amount sought for time already incurred before the Motion hearing. Therefore, the Court reduces the requested hours by 9.20 hours, for a total of 43.65 hours, giving rise to attorneys' fees in the amount of $16,805.25.

ISSi and McCloy also request $53.31 in expenses, which includes $11.83 for delivery of motion papers to chambers, $12.97 for a conference call between Ms. McCloy and ISSi executives to discuss the Motion, $14.07 for computerized research and $14.44 for delivery of reply papers to chambers. Second Supp. Meagher Decl., ¶ 10 & Ex. D. The Court finds that these expenses are reasonable and awards them in full.

## IV. CONCLUSION

For the reasons stated above, the Motion is GRANTED. ISSi and McCloy are excused from making any further payments to PAI under the Settlement Agreement and are entitled to payment by PAI of an additional $128,077.69 in damages on this Motion. ISSi and McCloy are also awarded $16,805.25 in attorneys' fees and $53.31 in costs. Therefore, judgment is entered in favor of ISSi and McCloy in the amount of $144,936.25.

**IT IS SO ORDERED.**

Dated: April 7, 2015

JOSEPH C. SPERO
United States Magistrate Judge